CP-99-3                                    1

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re: <br><br> Luis A. Rivera Vazquez | Querella <br><br> 2001 TSPR 138 <br><br> 155 DPR _____ |

Número del Caso: CP-1999-3

Fecha: 10/octubre/2001

Oficina del Procurador General:

>                    Lcda. Yvonne Casanova Pelosi
>                    Procuradora General Auxiliar

Abogado de la Parte Querellada:
>                    Lcdo. Arnaldo Rolón Rodríguez

Materia: Conducta Profesional

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Luis A. Rivera Vázquez                    CP-99-3        Conducta
                                                         Profesional

PER CURIAM

San Juan, Puerto Rico, a 10 de octubre de 2001.

Nos toca resolver otro caso en el que un notario público violó las disposiciones de la Ley Notarial de Puerto Rico[1] y su Reglamento,[2] así como los artículos 631 y 636 del Código Civil de Puerto Rico[3] y el Código de Ética Profesional.[4] Al así proceder, mancilló la fe pública notarial y el prestigio y honor de aquellos que están investidos de tan sagrado ministerio. Procede que tomemos las acciones disciplinarias correspondientes. Veamos.

---

[1] 4 L.P.R.A. sec. 2001, et seq.

[2] Íd., Ap. XXIV.

[3] 31 L.P.R.A. secs. 2147 y 2152.

[4] 4 L.P.R.A. Ap. IX.

I

El 18 de febrero de 1999 el Procurador General de Puerto Rico presentó una querella contra el licenciado Luis A. Rivera Vázquez, quien fue admitido al ejercicio de la abogacía el 14 de abril de 1978 y al ejercicio de la notaria el 18 de mayo del mismo año.  Dicha querella contiene cuatro (4) cargos contra el querellado, en su capacidad de notario.  Los incidentes que motivaron la querella datan del año 1986, fecha en que se otorgaron las escrituras objeto de este procedimiento, a saber: la Escritura de Compraventa Núm. 57 de 2 de septiembre de 1986 y la Escritura sobre Testamento Abierto Común Núm. 73 de 15 de diciembre de 1986, ambas otorgadas por el querellado.  Los cargos formulados contra el licenciado Luis A. Rivera Vázquez son los siguientes:

CARGO I

El Lcdo. Luis A. Rivera Vázquez[,] al autorizar la escritura número 57 de fecha 2 de septiembre de 1986[,] violentó la Sección 1 de la Ley Notarial vigente[,] a saber[,] la Ley 99 de fecha 27 de junio de 1956 la cual, entre otras cosas, obliga a todo notario a dar fe y autenticidad conforme a los contratos que ante él se realicen.

CARGO II

El Lcdo. Luis A. Rivera Vázquez[,] al autorizar la escritura número 73 de fecha 15 de diciembre de 1986[,] violentó el Artículo [631] del Código Civil del Puerto Rico y la Sección 15 de la Ley Núm. 99 de fecha 27 de junio de 1956, 31 L.P.R.A. [2147][,] habiendo sido los testigos instrumentales en un testamento[,] parientes dentro del cuarto grado de consanguinidad del legatario del tercio de libre disposición.

CARGO III

El Lcdo. Luis A. Rivera Vázquez[,] al autorizar la escritura número 57 de fecha de 2 de septiembre de 1986[,] violento [sic] la Sección 32 de la Ley Notarial vigente[,] a saber[,] Ley Número 99 de fecha 27 de junio de 1956[,] la cual dispone para que los defectos en las escrituras fuesen subsanados mediante escritura pública en la cual deberán comparecer los otorgantes de la escritura subsanada.

CARGO IV

El Lcdo. Luis A. Rivera Vázquez violentó[,] al autorizar la Escritura Número 57 de fecha 2 de septiembre de 1986[,] el Canon 35 de Etica [sic] Profesional[,] el cual, entre otras cosas, obliga a todo abogado a ser sincero y honrado al redactar documentos u otros affidavits [sic].

El 5 de marzo de 1999, el licenciado Luis A. Rivera Vázquez presentó ante este Tribunal su Contestación a la Querella, negando las imputaciones en su contra resumidas en los cargos I y IV, por la forma en que estaban redactados, y aceptando los hechos imputados en el cargo II, ofreciendo sus razones para tales actuaciones. Además, negó el cargo III, porque el Tribunal de Primera Instancia determinó, mediante sentencia en el caso civil número DAC-87-1081, que la Escritura Núm. 57 de 2 de septiembre de 1986 era válida y reflejaba el negocio jurídico habido entre las partes.

Luego de varios incidentes procesales, designamos al honorable Ramón A. Gómez Colón, Comisionado Especial, mediante resolución emitida el 15 de octubre de 1999, para que recibiera la prueba que las partes involucradas en este asunto tuvieran a bien presentar, y rindiera un informe con sus determinaciones de hechos y recomendaciones. Dicho Comisionado Especial convocó a las partes, vía orden a esos efectos, a reunirse en conferencia con antelación a vista, con el propósito de simplificar las cuestiones litigiosas y considerar la admisión de prueba. Luego de celebradas varias vistas, las partes sometieron ante el Comisionado Especial, el 24 de enero de 2000, un Informe de Conferencia entre Abogados.

Surge del mencionado informe, que el licenciado Luis A. Rivera Vázquez, luego de examinar detalladamente los eventos ocurridos y los documentos autorizados por él y circulados entre las partes, admitió que corrigió la escritura originalmente otorgada. Aceptó que, en lugar de levantar un acta aclaratoria, optó por añadir en la misma escritura original las siguientes correcciones: (1) insertó la frase "yo el notario autorizante doy fe de la existencia y descripción de la edificación antes descrita", a la descripción del inmueble objeto de la compraventa; (2) alteró la cuantía del balance hipotecario a favor del banco de veintisiete mil cuarenta dólares con ocho centavos ($27,040.08) a veinticuatro mil cuarenta dólares con ocho centavos ($24,040.08). Surge, además, que el aquí querellado aceptó haber utilizado como testigos instrumentales en el otorgamiento del testamento abierto a un sobrino y a un hermano del señor Francisco Javier Colón Torres, beneficiario del tercio de libre disposición.

Por su parte, el Comisionado Especial, en su informe, llegó a las siguientes determinaciones de hechos:

1. El querellado, Luis A. Rivera Vázquez, fue admitido al ejercicio de la abogacía el día 14 de abril de 1978 y al ejercicio del Notariado el día 18 de mayo del mismo año.

2. El día 20 de diciembre de 1986, la señora Angela Cabrera Cabrera otorgó testamento abierto ante el Notario y ahora querellado, Luis Rivera Vázquez.

3. En dicho testamento, la testadora nombró como heredero en el tercio de legítima estricta a su hija, Carmen Milagros Rodríguez Cabrera; a sus nietos, hijos de Carmen Milagros, Víctor M. Y Karla Michelle Maldonado Rodríguez, como herederos y por partes iguales del tercio de mejoras [sic]. El tercio de libre disposición se lo dejó al Sr. Francisco Javier Colón Torres, a quien nombró también como Albacea Testamentario.

4. El día 27 de mayo de 1987, Carmen Milagros Rodríguez Cabrera presentó una demanda sobre Nulidad de Testamento en el Tribunal Superior de Puerto Rico, Sala de Bayamón, bajo el Número 87-2347 contra Francisco Javier Colón Torres y los menores Víctor Manuel y Karla Michelle Maldonado Rodríguez, en la cual solicitaba [se] declarara nulo el testamento abierto otorgado por su señora madre, Ángela Cabrera Cabrera. Aducía para esto el hecho de que por lo menos dos de las personas que comparecieron en la escritura de testamento abierto como testigos, eran parientes dentro del cuarto grado del legatario, Francisco Colón Torres en contravención de los artículos 631 y 636 del Código Civil de Puerto Rico. Los demandados contestaron la demanda y aceptaron las alegaciones de la demanda.

5. El día 5 de diciembre de 1988, el Tribunal Superior de Puerto Rico, Sala de Bayamón, dictó sentencia por las alegaciones, declarando nula la disposición a favor del legatario, Francisco Javier Colón Torres, por no haberse observado las disposiciones del Artículo 636 del Código Civil, 31 L.P.R.A. Sección 2152.

6. El Tribunal Superior concluyó en su Sentencia del 5 de diciembre de 1988 que dos de los tres testigos instrumentales que comparecieron al otorgamiento del testamento, eran parientes dentro del cuarto grado de consanguinidad[.] Francisco Javier Colón Torres, uno, Angel Luis Torres Maldonado era su hermano, y el otro[,] Angel Luis Colón Alvarado, su sobrino.

7. Estos hechos fueron aceptados por el querellado, Lcdo. Luis Rivera Vázquez en el Informe de Conferencia Entre Abogados, explicando para ello que descanso [sic] en los dichos de la testadora al calificar los testigos del testamento, sin indagar individualmente si estos [sic] guardaban nexos de parentesco con la testadora o con los beneficiarios del testamento.

8. El día 2 de septiembre de 1986 el Lcdo. Luis Rivera Vázquez actuando como Notario Público otorgó la escritura de compraventa número 57[,] mediante la cual Víctor M. Maldonado Cruz y su esposa, Carmen Milagros Rodríguez Cabrera le vendieron a Javier Colón Torres una propiedad inmueble por la suma de $37,000.00.

9. El día 13 de mayo de 1987, los vendedores, esposos Maldonado-Rodríguez presentaron en el Tribunal Superior, Sala de

Bayamón, el caso número DAC87-1081 sobre Nulidad de Contrato y Daños y Perjuicios, solicitando del Tribunal que declarara nulo e inexistente el contrato y la escritura de compraventa número 57 otorgada [por] el querellado.

10. [Basaron] su solicitud en el hecho de que la propiedad le había sido vendida a la señora Ángela Cabrera Cabrera, madre de Carmen M. Rodríguez Cabrera y no al que aparecía en la escritura como comprador el Sr. Javier Colón Torres. Alegaron también que el nombre verdadero del Sr. [sic] Colón Torres es Francisco Javier y no Javier, y que éste compareció en la Escritura como soltero, cuando la verdad era que estaba casado con la señora Minerva Alicea Díaz.

11. Alegaron además los esposos Maldonado-Rodríguez que el día 27 de agosto de 1986 comparecieron a la oficina del querellado Luis A. Rivera Vázquez a firmar la escritura de compraventa. Que así lo hicieron, aunque la misma tenía el espacio donde aparece el nombre de los comparecientes, la fecha y la descripción de la propiedad en blanco. Que ese mismo día recibieron en dos giros y de manos del Lcdo. Luis A. Rivera Vázquez el dinero de la venta. Que la Escritura aparece fechada el 2 de septiembre de 1986.

12. El día 29 de septiembre de 1988 los esposos Maldonado-Rodríguez enmendaron la demanda para incluir como codemandado al [q]uerellado Luis A. Rivera Vázquez.

13. El día 28 de junio de 1995 la entonces Juez del Tribunal Superior, Sala de Bayamón, Honorable [sic] Zulma Zayas Puig, dictó Sentencia declarando Sin Lugar la demanda presentada.

14. En su sentencia del 28 de junio de 1995, el Tribunal Superior concluyó que la escritura de compraventa fue otorgada el día 2 de septiembre de 1986, según aconteció fuera de toda duda razonable, y sobre todo, por la poca credibilidad que le mereció los testimonios de los esposos Maldonado-Rodríguez.

15. Concluyó además el Tribunal que la propiedad [sí] le fue vendida a Javier Colón Torres, nombre bajo el cual era conocido por el Lcdo. Rivera Vázquez y que éste para dicha fecha estaba casado con Minerva Alicea Díaz.

16. El Tribunal tomó conocimiento judicial de que la señora Minerva Alicea Díaz presentó demanda de divorcio contra su esposo Javier Colón Torres en el caso civil RF85-3313 y que para la fecha de su radicación el Sr. [sic] Colón Torres solicitó los servicios profesionales del Querellado[,] quien declinó representarlo por haber sido abogado y notario de ambas partes en ocasiones anteriores.

17. La Juez Zulma Zayas Puig, concluyó en su Sentencia, que por la falta de credibilidad que le merecieron los testigos de los demandantes, esposos Maldonado-Rodríguez, [éstos] no [probaron] de forma convincente que la negociación de la compraventa no se hizo con el Sr. Francisco Javier Colón Torres.

18. El Tribunal Superior concluyó[,] además[,] en su Sentencia del 28 de junio de 1995, que estaba convencido de que el Lcdo. Rivera Vázquez conocía al Sr. Colón Torres como Javier Colón Torres y que cumplió con su deber de requerir el estado civil del comprador, previo al otorgamiento de la escritura. El Tribunal concluyó[,] además[,] que la omisión de no haber incluido el primero de los dos nombres de pila del Comprador, Francisco

Javier Colón Torres[,] en la escritura constituyó un mero error inconsecuente que en nada vició el consentimiento de las partes contratantes en torno a los requisitos establecidos por ley para contratos de compraventa de bienes inmuebles.

19. Con posterioridad a que se dictara Sentencia, declarando sin lugar la misma, los esposos Maldonado-Rodríguez, presentaron una Moción de Nuevo Juicio.

20. El día 2 de julio de 1998 y el día 10 de septiembre de 1998, el Tribunal Superior, Sala de Bayamón dictó Resolución y Sentencia aprobando una estipulación sometida por los esposos, Maldonado-Rodríguez y los señores Francisco Javier Colón y Minerva Alicea Díaz, mediante la cual los primeros le pagaban a los segundos la suma de $60,000.00, a cambio de lo cual la propiedad objeto del caso [pasaría] a nombre de los primeros. Las partes desistieron, sin perjuicio, de cualquier reclamación de daños y perjuicios que incoaran contra el Lcdo. Luis Rivera Vázquez.

21. Para el 20 de agosto de 1998 los querellantes[,] por conducto de su abogado[,] sometieron al Procurador General una copia expedida por el Querellado de la Escritura Número 57 del 2 de septiembre de 1986 y presentada ante el Registro de la Propiedad y otra copia de la misma escritura presentada a un Banco, en que hay diferencias entre una y otra.

22. Las partes estipularon en la Conferencia Entre Abogados lo siguiente: "El Lcdo. Luis Rivera Vázquez corrigió la Escritura Núm. 57 de fecha 2 de septiembre de 1986 luego de haber autorizado dicho documento y sin tener las partes presentes. Las correcciones consistieron en enmendar el balance hipotecario que existía a favor del Banco de San Juan, diferencias en la descripción del predio objeto del negocio jurídico de la escritura en la cual se le concedió a la descripción aludida la frase "yo el notario autorizante doy fe de la existencia y descripción de la edificación antes descrita." Mediante la conducta aludida el abogado violentó la Sección 1 de la Ley Número 99 de fecha 27 de junio de 1956."

23. No hubo evidencia de clase alguna de que los errores cometidos por el Notario Luis A. Rivera Vázquez se cometieran con el propósito de beneficiar a su cliente económicamente, o él personalmente.

24. El querellado reconoció que estaba en posición, en ambos casos, de ser mas [sic] diligente en el ejercicio de sus funciones, y que de haberlo sido los errores cometidos se hubieran evitado.

Evaluados los hechos a la luz de la investigación y el informe correspondiente del Comisionado Especial, de las comparecencias del Procurador General de Puerto Rico y de las partes afectadas en este asunto, procedemos a resolver.

II

Por estar íntimamente relacionados, consideraremos en conjunto los cargos I, III y IV. Todos esos cargos están relacionados con la alegada

violación por parte del aquí querellado con su obligación de dar fe de los negocios jurídicos que ante él se otorgan y de ser honesto en su proceder.

El artículo 2 de la Ley Notarial de Puerto Rico[5] consagra el principio de la fe pública notarial.  Dicho artículo dispone lo siguiente:

> **El notario es el profesional del Derecho que ejerce una función pública, autorizado para dar fe y autenticidad conforme a las leyes de los negocios jurídicos y demás actos y hechos extrajudiciales que ante él se realicen,** sin perjuicio de lo dispuesto en las leyes especiales.  **Es su función recibir e interpretar la voluntad de las partes, dándole forma legal, redactar las escrituras y documentos notariales a tal fin y conferirle[s] autoridad a los mismos.  La fe pública al notario es plena respecto a los hechos que, en el ejercicio de su función personalmente ejecute o compruebe y también respecto a la forma, lugar, día y hora del otorgamiento.**  (Énfasis nuestro.)

Mediante el ejercicio de la fe pública notarial, el notario público confiere autenticidad a la voluntad que las partes contratantes manifiestan ante él.  A ese respecto, la Regla 2 del Reglamento Notarial de Puerto Rico,[6] dispone lo siguiente:

> ...

> **El notario es el profesional del derecho que ejerce una función pública que consiste en recibir, interpretar y dar forma legal a la voluntad de las partes, dar fe de hechos, redactar los instrumentos adecuados a ese fin, conferirles autenticidad, conservar los originales de éstos y expedir copias que den fe de su contenido.**

> En su función pública, ejerce la fe pública notarial que tiene y ampara un doble carácter:

> **(A) En la esfera de los hechos, la exactitud de lo que el notario ve, oye o percibe por sus sentidos, y**

> **(B) en la esfera del Derecho, confiere autenticidad y fuerza probatoria a las declaraciones de voluntad de las partes en el instrumento público redactado conforme a su juicio sobre los preceptos del ordenamiento jurídico para la validez y eficacia del acto o contrato formalizado, y sobre la identidad y capacidad de las partes.**  (Énfasis nuestro.)

La fe pública notarial le impone al notario el deber de ser diligente en su gestión y de asegurarse de cumplir con todas las solemnidades de ley al autorizar instrumentos públicos.  El notario público, como profesional

---

[5] 4 L.P.R.A. sec. 2002.
[6] 4 L.P.R.A. Ap. XXIV, R. 2.

del Derecho, está obligado a cumplir cabalmente con el Código de Ética Profesional. El Canon 35 del referido Código[7] dispone lo siguiente:

> La conducta de cualquier miembro de la profesión legal ante los tribunales, para con sus representados y en las relaciones con sus compañeros debe ser sincera y honrada.
>
> No es sincero ni honrado el utilizar medios que sean inconsistentes con la verdad ni se debe inducir al juzgador a error utilizando artificios o una falsa relación de los hechos o del derecho. Es impropio variar o distorsionar las citas jurídicas, suprimir parte de ellas para transmitir una idea contraria a la que el verdadero contexto establece u ocultar alguna que le es conocida.
>
> **El abogado debe ajustarse a la sinceridad de los hechos al examinar los testigos, al redactar afidávit u otros documentos, y al presentar causas. El destruir evidencia documental o facilitar la desaparición de evidencia testifical en un caso es también altamente reprochable.** (Énfasis nuestro.)

El notario público tiene que circunscribirse a la verdad y actuar de conformidad con la ley en todo momento. Todo esto en función de su autoridad para imprimir autenticidad a los documentos que ante él se otorgan. La fe pública, de la cual está investido el notario, constituye la espina dorsal de nuestro sistema notarial.[8] La figura del notario es sumamente importante para la estabilidad de los negocios jurídicos. En cuanto a este aspecto, nos expresamos en In re Feliciano Ruiz[9] de la siguiente manera:

> El notario ejerce una función clave de inestimable importancia en los negocios jurídicos. Es custodio de la fe pública. Al autorizar un documento presuntivamente da fe pública y asegura que ese documento cumple con todas las formalidades de ley, formal y sustantivamente, que el documento es legal y verdadero, y que se trata de una transacción válida y legítima. La investidura que conlleva la fe pública notarial va acompañada de una presunción controvertible a los actos que ve y oye –*vidit et audit*– de que lo allí consignado es legal y verdadero. En resumen, la dación de fe está avalada por la confianza de que los hechos jurídicos y circunstancias que acredite fueron percibidos con sus sentidos. (Citas omitidas.)

Por la importancia que tiene la fe pública notarial dentro del tráfico de los bienes, el notario tiene que ser en extremo cuidadoso y desempeñar su ministerio con esmero, diligencia y estricto celo profesional.[10] Siendo tan importante su ministerio y teniendo unas consecuencias jurídicas tan

---

[7] 4 L.P.R.A. Ap. IX, C. 35.

[8] In re Feliciano Ruiz, 117 D.P.R. 269 (1986).

[9] Íd., pág. 275.

fundamentales para la estabilidad de los negocios jurídicos, constituye una falta de las más graves que puede cometer un notario, el faltar a la veracidad de los hechos.[11] El notario público que falta a la verdad en el otorgamiento de un instrumento público no sólo quebranta la fe pública notarial, sino que socava la integridad de la profesión legal y viola su deber de ser sincero y honrado, según dispuesto en el Código de Ética Profesional, supra.[12] Sabido es, que el notario público está obligado a guardar celosamente las disposiciones de la Ley y el Reglamento Notarial, así como las disposiciones del Código de Ética Profesional, so pena de medidas disciplinarias o responsabilidad civil o criminal.[13] Esto es así, porque la autenticidad y validez de un instrumento público está sujeta a que se cumpla estrictamente con los requisitos y formalidades legales.[14] Tan importante es la fe pública notarial, que no es necesario que el notario falte a la verdad intencionalmente para que incurra en una violación a la misma.[15] Para garantizar la integridad de la fe pública notarial, el notario está obligado a cumplir estrictamente con los preceptos de la Ley Notarial de Puerto Rico.[16] No hacerlo quebranta la fe pública notarial y pone en peligro todo el sistema.[17]

Una vez establecida la importancia de la fe pública notarial en nuestro sistema jurídico, y la obligación del notario público de ser honesto, sincero, honrado y circunscribirse a la verdad de los hechos que ocurren ante sí, nos resta analizar si el aquí querellado cometió las faltas que

---

[10] In re González Maldonado, res. el 20 de diciembre de 2000, 2000 T.S.P.R. 192, 152 D.P.R. ___ (2000), 2000 J.T.S. 203.

[11] In re Cruz Tollinche, 105 D.P.R. 500 (1976); In re Landing y Aulet, 107 D.P.R. 103 (1978); In re Rivera Arvelo y Ortiz Velázquez, 132 D.P.R. 840 (1993); In re Vargas Hernández, 135 D.P.R. 603 (1994).

[12] In re Rivera Arvelo y Ortiz Velázquez, supra, y S. Torres Peralta, El Derecho Notarial Puertorriqueño, Edición Especial, San Juan, Publicaciones STP, Inc., 1995.

[13] González Maldonado, supra.

[14] Íd.

[15] In re Chaar Cacho, 123 D.P.R. 655 (1989).

[16] In re González González, 119 D.P.R. 496 (1987).

[17] In re Feliciano Ruiz, supra; In re González González, supra.

el Procurador General le imputa.  Tenemos que tener presente que el propio querellado admitió que, luego de autorizar la Escritura de Compraventa Núm. 57 de 2 de septiembre de 1986, alteró la misma para corregir la cantidad del gravamen hipotecario y la descripción de la propiedad, sin que estuvieran presentes los otorgantes.

La Ley Notarial de Puerto Rico, <u>supra</u>, establece la forma en que se corregirán los defectos que surjan en un instrumento público y que sean percibidos luego de su autorización.  A esos efectos, la referida Ley dispone en su artículo 29 lo siguiente:

> **Los defectos de que adolezcan los documentos notariales ínter vivos podrán ser subsanados, sin perjuicio de terceros, por las partes que hubiesen comparecido en el documento o por sus herederos o causahabientes por medio de una escritura pública en que se haga constar el defecto, su causa y la declaración que lo subsana.**

> **Si se dejase de hacer constar por el notario algún dato o circunstancia dispuesto por este Capítulo, o si se tratase de error en el relato de hechos presenciados por el notario que corresponda a éste consignar; podrán estas faltas ser subsanadas por el notario autorizante a sus expensas, por propia iniciativa o a instancia de cualesquiera de las partes, por medio de acta notarial en que se haga constar el defecto o error, su causa y la declaración que lo subsana.**

> Si fuera imposible hacer la subsanación en las formas indicadas anteriormente, podrá obtener ésta por cualquier medio de prueba admitido en derecho mediante el procedimiento judicial correspondiente ante el Tribunal Superior.

> En cualquier caso el notario indicará al margen del documento matriz, bajo su firma y sello, el hecho de la corrección e indicará la escritura o acta notarial en las que se haya efectuado.[18] (Énfasis nuestro.)

Por su parte, la Regla 39 del Reglamento Notarial,[19] regula el otorgamiento de actas de subsanación.  El texto de dicha regla dispone lo siguiente:

> **Es acta de subsanación el instrumento que redacta el notario, sin intervención de las partes otorgantes y sin perjuicio de tercero, para corregir los defectos u omisiones de que adolezca un instrumento público previo.  El notario hará constar en el acta que la subsanación obedece a datos o hechos que presenció o que de otro modo le constan personalmente y que no afectan el negocio jurídico.**

---

[18] Sec. 2047.

[19] 4 L.P.R.A. Ap. XXIV, R. 39.

Excepto en los testamentos, pueden ser objeto de acta de subsanación, a manera de ejemplo, asuntos tales como:

(a) ...

**(b) La omisión o incorrección en la descripción de una propiedad cuando la corrección fuere para conformar lo informado en el instrumento a cualquier información que surja del Registro de la Propiedad o en documento fehaciente, y que no fuere incompatible con lo convenido por las partes contratantes.**

(c) ...

**(d) Hechos tales como la existencia o inexistencia de una edificación, el cotejo de documentos, la existencia y detalles de planos, fotografías y otros documentos y las fechas y entrega de documentos o valores.**

(e) ...

(f) ...

(g) ...

(h) ...   (Énfasis nuestro.)

Nótese que la propia Ley Notarial de Puerto Rico y su reglamento disponen los mecanismos para corregir las omisiones o defectos de los cuales puedan adolecer los instrumentos públicos. Estas disposiciones toman en consideración la posibilidad de que se cometan errores al otorgar un instrumento público. Para preservar la verdad y la fe pública notarial, el notario debe seguir estrictamente este procedimiento para la corrección de defectos en los instrumentos públicos.

En el caso de autos, el querellado no siguió el procedimiento establecido por la ley y el reglamento para corregir los defectos de la Escritura Núm. 57 de 2 de septiembre de 1986. En lugar de otorgar otra escritura en la que comparecieran los otorgantes originales para subsanar el defecto, optó por alterar el documento público, luego de ser autorizado por él mismo y en ausencia de los otorgantes, en abierta violación a su deber de ser honesto y honrado, así como de cumplir cabalmente las disposiciones de la ley y el Reglamento Notarial. Su conducta estuvo reñida con la ética y lesionó la fe pública notarial, de la cual está investido. No podemos permitir que se violente impunemente la institución de la fe pública notarial y se ponga en peligro la estabilidad del tráfico jurídico, por la práctica de algunos notarios de utilizar medios incompatibles con la verdad y la

honradez en el descargo de su ministerio.  Las faltas I, III y IV fueron cometidas por el aquí querellado.

                                    III

Nos corresponde ahora analizar el cargo II imputado al aquí querellado por el Procurador General.  Al realizar este análisis, utilizaremos las normas esbozadas anteriormente con respecto a la fe pública notarial y las disposiciones del Código Civil de Puerto Rico y su interpretación jurisprudencial, en torno a las formalidades requeridas en el otorgamiento de un testamento abierto.  Veamos.

El artículo 644 del Código Civil de Puerto Rico,[20] dispone lo siguiente:

> El testamento abierto deberá ser otorgado ante notario y tres testigos idóneos que vean y entiendan al testador, y de los cuales uno, a lo menos, sepa y pueda leer y escribir.
>
> Sólo se exceptuarán de esta regla los casos expresamente determinados en este mismo subcapítulo.

En cuanto a la idoneidad de los testigos que pueden comparecer en un testamento, el Código Civil dispone lo siguiente:

> No podrán ser testigos en los testamentos:
>
> (1) Los menores de edad.
>
> (2) Los que no tengan la calidad de vecinos o domiciliados en el lugar del otorgamiento, salvo en los casos exceptuados por la ley.
>
> (3) Los ciegos o los totalmente sordos o mudos.
>
> (4) Los que no entienden el idioma del testador.
>
> (5) Los que no estén en su sano juicio.
>
> (6) Los que hayan sido condenados por el delito de falsificación de documentos públicos o privados, o por el de falso testimonio, y los que estén sufriendo pena de interdicción civil.
>
> (7) Los dependientes, amanuenses, criados, ni persona otra alguna que trabaje en la misma oficina, o sea socio, o pariente dentro del cuarto grado de consanguinidad o segundo de afinidad del notario autorizante.[21]

---

[20] 31 L.P.R.A. sec. 2181.

[21] Íd., sec. 2146.

En cuanto a los parientes o herederos o legatarios nombrados en el testamento el Código Civil dispone:

En el testamento abierto tampoco podrán ser testigos los herederos y legatarios en él instituidos, ni los parientes de los mismos dentro del cuarto grado de consanguinidad o segundo de afinidad.

No están comprendidos en esta prohibición los legatarios y sus parientes, cuando el legado sea de algún objeto o mueble o cantidad de poca importancia con relación al caudal hereditario.[22]

La Ley Notarial de Puerto Rico, supra, también contiene una disposición que prohíbe a determinados parientes del notario o de los otorgantes a servir como testigos instrumentales en un instrumento público. A esos efectos, el artículo 22 de la referida Ley[23] dispone lo siguiente:

Los testigos, incluso los de conocimiento, deberán ser mayores de edad, capacitados y que sepan y puedan leer y firmar. No podrán ser testigos instrumentales los empleados del notario autorizante, ni los parientes del notario o de las partes interesadas, dentro del cuarto grado de consanguinidad o segundo de afinidad.

El artículo 636 del Código Civil[24] dispone que "[s]erá nulo el testamento en cuyo otorgamiento no se hayan observado las formalidades respectivamente establecidas en este Capítulo". Hemos resuelto, en repetidas ocasiones, que la comparecencia de tres testigos idóneos es un requisito formal para la validez del testamento en ausencia del cual el testamento es nulo.[25] El notario, como profesional del derecho investido de la fe pública notarial, está obligado a asegurarse fehacientemente de la idoneidad de los testigos que comparecen a un testamento abierto. En Ríos v. El Registrador de la Propiedad,[26] nos expresamos a los efectos de que la dación de fe del notario en cuanto a la idoneidad de los testigos en un testamento es suficiente calificación sobre su capacidad, para

---

[22] Íd., sec. 2147.

[23] 4 L.P.R.A. sec. 2040.

[24] 31 L.P.R.A. sec. 2152.

[25] Rivera Pitre v. Galarza Martínez, 108 D.P.R. 565 (1979); In re Méndez Rivera, 141 D.P.R. 753 (1996); In re López Toro, res. el 14 de octubre de 1998, 98 T.S.P.R. 133, 146 D.P.R. ___ (1998), 98 J.T.S. 136.

[26] 15 D.P.R. 665 (1909).

demostrar la incapacidad de los testigos habría que probarlo en un juicio.[27]
En In re Méndez Rivera, supra, establecimos que la falta de diligencia y de cumplimiento con los requisitos y solemnidades en el otorgamiento de un testamento abierto constituyen una violación al Código de Ética Profesional, supra, el cual exige un desempeño eficiente, responsable y diligente de la profesión legal, que conlleva sanciones disciplinarias.

Veamos la conducta del aquí querellado, a la luz de la doctrina establecida anteriormente, para determinar si en efecto cometió la falta II que le ha sido imputada. El propio querellado de autos aceptó que utilizó testigos que no eran idóneos en el otorgamiento de la Escritura de Testamento Abierto Núm. 73 de 15 de diciembre de 1986. Los testigos no eran idóneos por ser parientes del legatario del tercio de libre disposición, dentro de los grados prohibidos por ley. De hecho, el referido testamento fue declarado nulo por el Tribunal de Primera Instancia. El propio querellado de autos aceptó que esta situación ocurrió por confiar en los dichos de la testadora sobre la idoneidad de los testigos y no indagar con cada uno individualmente sobre su relación de parentesco con los herederos y legatarios nombrados. Su acción demuestra una crasa negligencia al ejercer su ministerio, que lo llevó a dar fe de un hecho que era falso, conllevando, a su vez, a la nulidad parcial del testamento. Esta acción del aquí querellado fue contraria a las disposiciones expresas de los artículos 631 y 636 del Código Civil, supra, de la Ley Notarial de Puerto Rico, supra, y del Código de Ética Profesional, supra. Con su actuación violó la fe pública notarial y su deber de desempeñarse con diligencia, honradez y con el propósito de garantizar una representación legal adecuada a cada ciudadano, según dispone el Código de Ética Profesional, supra. Su proceder manifiesta un grave menosprecio con el cumplimiento de las disposiciones legales y negligencia crasa en el ejercicio de su ministerio. El cargo II fue cometido.

IV

---

[27] Íd.

Por los fundamentos antes expuestos, procede la suspensión indefinida del ejercicio de la notaría del licenciado Luis A. Rivera Vázquez.

Se dictará sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

|  |  | Conducta |
| --- | --- | --- |
| Luis A. Rivera Vázquez | CP-99-3 | Profesional |

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

|  |  | Conducta |
| --- | --- | --- |
| Luis A. Rivera Vázquez | CP-99-3 | Profesional |

SENTENCIA


San Juan, Puerto Rico, a 10 de octubre de 2001.

        Por los fundamentos expuestos en la Opinión Per Curiam que antecede, la cual se hace formar parte íntegra de la presente, se dicta Sentencia decretando la suspensión indefinida del licenciado Luis A. Rivera Vázquez del ejercicio de la notaría.


        La Oficina del Alguacil de este Tribunal procederá, de inmediato, a incautarse de la obra notarial del licenciado Luis A. Rivera Vázquez, incluyendo su sello notarial, luego de lo cual entregará la misma a la Oficina de Inspección de Notarías para el correspondiente examen e informe a este Tribunal.


        Lo acordó y manda el Tribunal y certifica la Secretaria del Tribunal Supremo.  El Juez Asociado señor Rebollo López no intervino.



                        Isabel Llompart Zeno
                    Secretaria del Tribunal Supremo