

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re<br><br>Edith E. Vázquez Pardo | 2012 TSPR 113<br><br>185 DPR \_\_\_\_ |

Número del Caso: CP-2010-13

Fecha: 27 de junio de 2012

Abogado de la Parte Querellada:

        Lcdo. Virgilio Mainardi Peralta

Oficina de la Procuradora General:

        Lcda. Zaira Girón Anadón<br>        Subprocuradora General

        Lcda. Minnie H. Rodríguez López<br>        Procuradora General Auxiliar

Materia: Conducta Profesional – Censura Enérgica

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Edith E. Vázquez Pardo       CP-2010-13     Conducta
                                                              Profesional

PER CURIAM

San Juan, Puerto Rico, a 27 de junio de 2012.

La Lcda. Edith E. Vázquez Pardo (querellada), fue admitida al ejercicio de la abogacía el 25 de enero de 2000 y, posteriormente, al ejercicio de la notaría el 3 de abril del mismo año. El 18 de agosto de 2010 el Procurador General de Puerto Rico radicó una querella contra la licenciada Vázquez Pardo. Le formularon dos cargos por alegadas violaciones a la fe pública notarial y al Canon 35 del Código de Ética Profesional, *infra*. A continuación exponemos un resumen de los hechos que motivaron el proceso disciplinario que hoy atendemos.

# I

El 20 de marzo de 2003 el Sr. Carlos Israel Rivera Rodríguez, la Sra. Maribel Martínez Isona, el Sr. Benjamín Flores Soto y la Sra. Ada Miriam Palau Inglés (quejosos) presentaron una queja ante este Tribunal contra la licenciada Vázquez Pardo.[1] Los quejosos indicaron en la queja que el Lcdo. José A. Vázquez Soto fungió como notario en una compraventa en la cual adquirieron dos terrenos de la corporación Nakato, Inc. Además, suscribieron un contrato en el cual Nakato, Inc. construiría varias casas en los terrenos adquiridos. Debido a que Nakato, Inc. no terminó la construcción de las casas, los quejosos presentaron una demanda de daños y perjuicios en su contra. En dicha demanda los quejosos fueron representados por el Lcdo. John Ward Llambías y por la Lcda. Rosa I. Ward Cid.[2] Los licenciados acordaron con los quejosos que cobrarían el 33% de lo obtenido en la sentencia por concepto de honorarios de abogados. Luego de varios trámites procesales, los quejosos obtuvieron una sentencia a su favor y el tribunal emitió una orden

---

[1] Cabe señalar, que la queja fue presentada contra la Lcda. Edith E. Vázquez Pardo, el Lcdo. José A. Vázquez Soto, el Lcdo. John Ward Llambías, la Lcda. Rosa I. Ward Cid y el Lcdo. Víctor Vega Ruiz. Sin embargo, la queja contra el licenciado Vega Ruíz fue archivada mediante resolución emitida por este Tribunal el 13 de febrero de 2009. Además, debido al fallecimiento del licenciado Vázquez Soto, la queja en su contra fue archivada mediante resolución emitida por este Tribunal el 12 de junio de 2009. En torno a los licenciados Ward Llambías y Ward Cid, el proceso disciplinario continúa.

[2] Carlos I. Rivera Rodríguez, et als. v. Nakato, Inc., et als., Civil Núm. GDP-1996-0112 en el Tribunal de Primera Instancia, Sala Superior de Guayama.

para que se procediera con la venta en pública subasta de cuatro fincas del demandado. Los quejosos obtuvieron la buena pro de la subasta de dos de las fincas.

Así las cosas, los licenciados Ward Llambías y Ward Cid citaron a los quejosos para que acudieran, el 8 de julio de 2002, al Tribunal de Primera Instancia, Sala de Guayama, para firmar la escritura de venta judicial. Los quejosos acudieron a la cita y allí conocieron por primera vez a la licenciada Vázquez Pardo. Los licenciados Ward Llambías y Ward Cid habían escogido a la querellada para que fungiera como notario en la otorgación de la escritura. Luego de firmar la escritura de venta judicial, los licenciados les presentaron a los quejosos una escritura de dación en pago. En la misma se establecía que los quejosos le otorgaban el 33% de las propiedades adquiridas en la venta judicial a los licenciados Ward Llambías y Ward Cid como pago de los honorarios de abogados. Los quejosos argumentaron que no sabían de qué trataba la escritura y, además, que la escritura no tenía número, tenía espacios en blanco y no contenía el valor de la propiedad. A pesar de los mencionados defectos los quejosos firmaron la escritura. Estos también alegaron que le solicitaron a la querellada copia de las escrituras, pero éstas nunca se las entregó.

Vista la queja, solicitamos a la querellada que contestara la queja presentada en su contra. En la

contestación a la queja la querellada argumentó que los licenciados Ward Llambías y Ward Cid se comunicaron con ella el 7 de julio de 2002, para solicitarle que otorgara al día siguiente una escritura de venta judicial. La licenciada Vázquez Pardo explicó que el licenciado Ward Llambías redactó el instrumento público y se lo entregó para examinarlo antes de acudir al otorgamiento de dicha escritura. Indicó, además, que pudo revisar todos los documentos complementarios necesarios para la otorgación y autorización de la escritura.

Por otro lado, la querellada señaló que de camino a Guayama el licenciado Ward Llambías le mostró por primera vez la escritura de dación en pago. El licenciado Ward Llambías le explicó que luego del otorgamiento de la escritura de venta judicial le presentaría a los quejosos la escritura de dación en pago y si ellos aceptaban lo dispuesto en la misma aprovecharían su presencia para otorgar dicho instrumento público. En ese momento la querellada verificó la escritura de dación en pago y encontró que la misma adolecía de varios defectos, pero entendió que los mismos podían ser subsanados por un acta de subsanación.

Contrario a lo alegado por los quejosos, la licenciada Vázquez Pardo adujo que en la escritura de dación en pago sólo existía un espacio en blanco para

consignar el método que utilizó para identificar a los otorgantes. La querellada indicó que debido a un problema con la identificación de uno de los otorgantes ella decidió hacer la salvedad a maquinilla y llenar el espacio en blanco en su oficina. Por otro lado, arguyó que los quejosos tuvieron la oportunidad de leer y analizar juntos la escritura sin la intervención de los licenciados Ward Llambías y Ward Cid. Explicó que luego de permitir que los quejosos discutieran la escritura a solas, ella se acercó a ellos para cerciorarse de que entendían el negocio jurídico y aclaró las dudas que tenían. Al quedar convencida de que los quejosos comprendieron la naturaleza y el alcance de la escritura de dación en pago, la licenciada Vázquez Pardo procedió con el otorgamiento y autorización de la misma. Sobre el incumplimiento de entregar una copia de cada escritura a los quejosos, la querellada alegó que los quejosos en dos ocasiones la contactaron pero luego no acudieron a recoger las copias.

El 11 de julio de 2003 referimos la queja a la Oficina de Inspección de Notarías (ODIN). La ODIN rindió un informe el 20 de octubre de 2005 en el cual concluyó que la licenciada Vázquez Pardo violó el Art. 2 de la Ley Notarial de Puerto Rico[3] y el Canon 35 del Código de Ética Profesional[4] por apartarse de su deber principal como notario y atentar contra la fe pública

---

[3] Ley Núm. 75 de 2 de julio de 1987, 4 L.P.R.A. sec. 2002.

[4] 4 L.P.R.A. Ap. IX, C. 35.

notarial. La ODIN entendió que la querellada debió abstenerse de autorizar las escrituras porque no tuvo oportunidad de examinarlas detenidamente y tampoco tuvo oportunidad de examinar los documentos complementarios ni los estudios de títulos necesarios. De otra parte, expresó que la licenciada debió conocer que la escritura de dación en pago no era inscribible en el Registro de la Propiedad por no contener el valor de la propiedad. Indicó, además, que esta omisión evita que se pueda determinar si los sellos de rentas internas fueron cancelados correctamente. Luego de la respuesta de la licenciada Vázquez Pardo, el 16 de febrero de 2007, referimos la queja ante la Oficina del Procurador General para que realizara una investigación y rindiera un informe conforme con la Regla 14(d) del Reglamento de este Tribunal.[5]

Luego de llevar a cabo la correspondiente investigación, la Procuradora General rindió un informe en el cual concurrió con los señalamientos de la ODIN. Así las cosas, mediante resolución del 12 de junio de 2009 autorizamos a la Procuradora General a que presentara la querella correspondiente de conformidad con el contenido de dicho informe. Por consiguiente, el 18 de agosto de 2010 la Procuradora General presentó una querella contra la licenciada Vázquez Pardo.

---

[5] 4 LPRA XXI-A R. 14(d).

En la querella, la Procuradora General formuló dos cargos. En el cargo I la Procuradora General imputó a la querellada la violación al Art. 2 de la Ley Notarial, *supra*, por haber violado la fe pública notarial. En el cargo II le atribuyó a la querellada infringir el Canon 35 del Código de Ética Profesional, *supra*, respecto al deber de los abogados de "ajustarse a la sinceridad de los hechos al examinar los testigos, al redactar afidávits u otros documentos, y al presentar sus causas". La Procuradora General expresó, en lo pertinente, que:

> La actuación de la querellada Vázquez Pardo, al autorizar unas escrituras redactadas por otro abogado, con graves defectos notariales, no sólo constituye un atentado contra la fe pública notarial y las disposiciones de la Ley y el Reglamento Notarial según [a] señalado la ODIN en su informe, sino que constituye una violación al Primer Criterio General de los Cánones de Ética Profesional, el cual obliga a todo miembro de la profesión legal, individual y colectivamente, a velar por que los distintos procesos legales de la sociedad se incorporen y consagren de manera efectiva y adecuada. Sus actuaciones negligentes impidieron que se ajustara a la sinceridad de los hechos al autorizar el documento objeto de este procedimiento, incurriendo al así hacerlo en violación al Canon 35 de[l] [Código de] Ética Profesional.

Así las cosas, mediante resolución del 15 de marzo de 2011 nombramos al Hon. Carlos Dávila Vélez como Comisionado Especial (Comisionado) para que recibiera prueba y nos rindiera un informe con sus determinaciones de hechos y recomendaciones. Luego de una vista ante el Comisionado, éste emitió un informe en el cual concluyó que la licenciada Vázquez Pardo violó el Art. 2 de la

Ley Notarial, *supra*, y el Canon 35 del Código de Ética Profesional, *supra*.

El Comisionado indicó que al autorizar las escrituras, la querellada dio fe pública de que éstas cumplían con todas las formalidades de la Ley Notarial, *supra*, aunque estaba consciente de que éstas adolecían de defectos. Al considerar la prueba el Comisionado entendió que quedó establecido lo siguiente: (1) las escrituras fueron redactadas por el licenciado Ward Llambías; (2) la querellada examinó por primera vez las escrituras el día del otorgamiento; (3) la querellada descansó sólo en los documentos que le presentaron los licenciados Ward Llambías y Ward Cid; (4) la licenciada Vázquez Pardo autorizó las escrituras aun cuando se percató de que las mismas no contenían el valor de las propiedades; (5) la querellada omitió en las dos escrituras las advertencias legales expresas sobre los efectos de la adquisición de una partición indivisa en una finca según requerido por el Art. 15(g) de la Ley Notarial; (6) omitió las advertencias sobre el estado de las cargas de las propiedades y sobre el hecho de que existían transacciones previas realizadas por Nakato, Inc. relativas a otras dos escrituras de dación en pago; (7) la escritura de dación en pago adolecía del segundo apellido de uno de los comparecientes; (8) la querellada omitió el número de la escritura de dación en pago; (9) ambas escrituras contenían guarismos en fechas y

cantidades referentes a hipotecas; (10) la escritura de venta judicial tenía una nota de saca que no contenía el nombre de a quién se hizo la copia; (11) previo al otorgamiento de las escrituras la querellada no examinó los estudios de títulos de las propiedades; (12) la licenciada Vázquez Pardo no hizo constar en la escritura de dación en pago que los otorgantes debían otorgar una escritura de rectificación para asignar el valor de las propiedades; y (13) la querellada no llenó los espacios en blancos.

No obstante, el Comisionado indicó en su informe que la licenciada Vázquez Pardo cumple con varios de los atenuantes que este Tribunal ha validado en los procedimientos disciplinarios. El Comisionado expresó, en lo pertinente, que:

> Habiendo concluido que la querellada quebrantó el Art. 2 de la Ley Notarial, supra, y el Canon 35 de[l] [Código de] Ética Profesional, supra, procede que llamemos la atención de este Honorable Tribunal sobre varios atenuantes. Estos son: para la fecha de los hechos la querellada se iniciaba en el ejercicio de la práctica de la abogacía y de la notaría; la querellada goza de una reputación intachable y respetada entre los miembros de la profesión legal; no existen quejas, querellas o reclamaciones pendientes contra la querellada; la querellada no actuó de mala fe o con la intención de engañar; y los quejosos no sufrieron daño pecuniario alguno por la actuación u omisión de la querellada, ya que la escritura de venta judicial está inscrita en el Registro de la Propiedad y los licenciados Ward retiraron la escritura de dación en pago y renunciaron a cualquier derecho o interés sobre las fincas.

## II

Como principio del derecho notarial, todo notario está inexorablemente vinculado al estricto cumplimiento de la Ley Notarial de Puerto Rico[6] y a los Cánones del Código de Ética Profesional, 4 L.P.R.A. Ap. IX.[7] Los notarios están obligados a respetar la Ley Notarial de Puerto Rico, *supra*. En el cumplimiento de dicha función el notario puertorriqueño representa la fe pública y la ley para todas las partes.[8] Una vez el notario se aparta de cumplir con estos requisitos y las formalidades, incurre en conducta que acarrea una sanción disciplinaria, ya que lesiona la confianza y la función pública en él investida.[9] La sanción disciplinaria correspondiente incluye no sólo su función como notario, sino también como abogado.[10]

La fe pública notarial constituye la espina dorsal de nuestro sistema notarial.[11] El Art. 2 de la Ley Notarial, *supra*, consagra el principio de la fe pública notarial. Este artículo dispone que "la fe pública al notario es plena respecto a los hechos que, en el ejercicio de su función, personalmente ejecute o

---

[6] Ley Núm. 75 de 2 de julio de 1987, 4 L.P.R.A. sec. 2001 *et seq.*

[7] In re Martínez Almodóvar, 180 D.P.R. 805 (2011).

[8] In re González Maldonado, 152 D.P.R. 871 (2000); In re Colón Muñoz, 131 D.P.R. 121 (1992).

[9] In re Capestany Rodríguez, 148 D.P.R. 728 (1999).

[10] In re Martínez Almodóvar, supra.

[11] Íd.; In re Rivera Aponte, 169 D.P.R. 738 (2006).

compruebe, y también respecto a la forma, lugar, día y hora del otorgamiento". Así pues, la fe pública notarial es de tan alta importancia que no es necesario que el notario falte a la verdad intencionalmente para que incurra en una violación a ella.[12]

Como sabemos, cuando un notario autoriza un documento da fe y asegura que ese documento cumple con todas las formalidades de ley, formal y sustantivamente, que el documento es legal y verdadero, y que se trata de una transacción válida y legítima.[13] La investidura que conlleva la fe pública notarial va acompañada de una presunción controvertible a los actos que ve y oye el notario de que lo allí consignado es legal y verdadero.[14] Es precisamente esta presunción de legalidad, veracidad y legitimidad lo que le brinda certeza, garantía y eficacia al documento notarial.[15] Por esto, es imprescindible que el notario actúe con el más alto grado de honradez y honestidad como custodio de la fe pública notarial.[16]

Hemos expresado que la fe pública notarial tiene como base la voluntad ilustrada de los contratantes; no

---

[12] In re Martínez Almodóvar, supra; In re Rivera Vázquez, 155 D.P.R. 267 (2001).

[13] In re González Maldonado, supra; In re Rivera Alvelo y Ortiz Velázquez, 132 D.P.R. 840 (1993).

[14] In re Rodríguez Mangual, 172 D.P.R. 313 (2007); In re Feliciano Ruiz, 117 D.P.R. 269 (1986).

[15] In re Rivera Aponte, supra.

[16] Íd.

puede ser fruto de la ignorancia y la obscuridad.[17] Por esto, al ser el notario el principal instrumento de la fe pública, y conocedor del Derecho y las leyes, tiene la obligación de propiciar y cerciorarse de ese estado de conciencia informada.[18] Tiene la obligación de suplir las explicaciones, aclaraciones y advertencias en todo caso en que hagan falta para lograr el consentimiento enterado de los otorgantes al acto notarial.[19]

Por la importancia que tiene la fe pública notarial en el tráfico de los bienes jurídicos, el notario tiene que ser cuidadoso y debe desempeñar su ministerio con esmero, diligencia y estricto celo profesional.[20] La fe pública notarial le impone al notario el deber de ser diligente en su gestión y de asegurarse de cumplir con todas las solemnidades de la Ley Notarial, *supra*, al autorizar los instrumentos públicos.[21] A tenor de lo anterior, un notario debe abstenerse de autorizar instrumentos públicos en forma expedita o incidental, para evitar así la posibilidad de convertirse en un simple observador del negocio jurídico.[22]

---

[17] In re Hernández Vázquez, 180 D.P.R. 527 (2010).

[18] In re Hernández Vázquez, supra.

[19] Íd.; In re Meléndez Pérez, 104 D.P.R. 770 (1976).

[20] In re Martínez Almodóvar, supra; In re Rivera Vázquez, supra.

[21] In re Rivera Vázquez, supra.

[22] In re Meléndez Pérez, supra.

Consecuentemente, el notario que falte a la verdad, ya sea intencionalmente o no, en el otorgamiento de un instrumento público no sólo quebranta la fe pública notarial, sino que socava la integridad de la profesión legal y viola su deber de ser sincero y honrado, conforme a lo dispuesto en el Canon 35 del Código de Ética Profesional, *supra*.[23] Conforme a ello, cuando un notario otorga un documento notarial en contravención a la Ley Notarial, *supra*, constituye una violación al Canon 35 del Código de Ética Profesional, *supra*.[24]

Los abogados tienen la obligación de velar por que los procesos legales se lleven de forma honesta, digna y transparente.[25] El Canon 35 del Código de Ética Profesional, *supra,* dispone, en lo pertinente, que:

> La conducta de cualquier miembro de la profesión legal ante los tribunales para con sus representados y en las relaciones con sus compañeros debe ser sincera y honrada.
>
> No es sincero ni honrado el utilizar medios que sean inconsistentes con la verdad ni se debe inducir al juzgador a error utilizando artificios o una falsa relación de los hechos o del derecho.
>
> El abogado debe ajustarse a la sinceridad de los hechos al examinar los testigos, al redactar afidávits u otros documentos, y al presentar causas.

De acuerdo a la disposición anterior, el Canon 35 del Código de Ética Profesional, *supra,* le exige a los

_____

[23] In re Martínez Almodóvar, supra.

[24] In re Charbonier Laureano, 156 D.P.R. 575 (2002).

[25] In re Pons Fontana, 182 D.P.R. 300 (2011).

abogados ajustarse a la sinceridad de los hechos al examinar los testigos y al redactar documentos. Al respecto, reiteradamente hemos expresado que la conducta de un abogado debe ser sincera y honrada frente a todos y ante todo tipo de acto.[26]

El deber del Canon 35 del Código de Ética Profesional, *supra,* se infringe por el simple hecho de faltar a la verdad, independientemente de los motivos de la falsedad.[27] En el caso de In re Montañez Miranda, 157 D.P.R. 275, 282 (2002), señalamos que "no es necesario que el notario haya faltado a la verdad intencionalmente para faltar a la fe pública y a los Cánones del Código de Ética Profesional". En esencia, se infringe este deber por el simple hecho de faltar a la verdad, pues no es necesario que se haya faltado a la verdad deliberadamente o con la intención de defraudar o engañar.[28] Por lo tanto, no es defensa que no se haya obrado de mala fe o deliberadamente, ni con intención de engañar, como tampoco lo es que no se le haya causado daño a un tercero.[29]

De otra parte, este Tribunal ha establecido que al determinar la sanción disciplinaria que habrá de

---

[26] In re Iglesias García, res. el 2 de diciembre de 2011, 2011 T.S.P.R. 191, 183 D.P.R. ___ (2011); In re Pons Fontana, supra; In re Collazo Sánchez, 159 D.P.R. 769 (2003).

[27] In re Iglesias García, supra; In re Nieves Nieves, 181 D.P.R. 25 (2011); In re Curras Ortiz, 174 D.P.R. 502 (2008).

[28] In re Iglesias García, supra.

[29] In re Nieves Nieves, supra; In re Astacio Caraballo, 149 D.P.R. 790 (2000).

imponerse a un abogado podemos tomar en cuenta los siguientes factores: (1) la buena reputación del abogado en la comunidad; (2) el historial previo de éste; (3) si ésta constituye su primera falta y si ninguna parte ha resultado perjudicada; (4) la aceptación de la falta y su sincero arrepentimiento; (5) si se trata de una conducta aislada; (6) el ánimo de lucro que medió en su actuación; (7) resarcimiento al cliente; y (8) cualesquiera otras consideraciones, ya bien atenuantes o agravantes, que medien a tenor con los hechos.[30]

### III

A la luz de lo antes expuesto, concluimos que la licenciada Vázquez Pardo infringió el Art. 2 de la Ley Notarial[31] y el Canon 35 del Código de Ética Profesional.[32] Veamos.

A tenor de la norma antes señalada, la querellada tenía la obligación de examinar detalladamente no sólo las escrituras que iba a otorgar, sino también todos los documentos relacionados con el negocio jurídico. La licenciada Vázquez Pardo no tuvo la oportunidad de examinar detalladamente las escrituras redactadas por el licenciado Ward Llambías. No es suficiente examinar las escrituras de manera ligera sin indagar sobre el

---

[30] In re Plaud González, 181 D.P.R. 874 (2011); In re Colón Morera, 172 D.P.R. 49 (2007); In re Quiñones Ayala, 165 D.P.R. 138 (2005).

[31] Ley Núm. 75 de 2 de julio de 1987, 4 L.P.R.A. sec. 2002.

[32] 4 L.P.R.A. Ap. IX, C. 35.

contenido de las mismas ni cerciorarse que cumplen con todos los requisitos que exige la Ley Notarial, *supra*. La querellada inspeccionó por primera vez el expediente del caso y las escrituras el mismo día que otorgó los instrumentos públicos. Además, previo al otorgamiento y autorización de las escrituras la querellada no tuvo oportunidad de examinar los estudios de títulos de las propiedades. La licenciada Vázquez Pardo simplemente descansó en los documentos que le produjeron los licenciados Ward Llambías y Ward Cid, sin llevar a cabo diligencias adicionales. No desempeñó su ministerio con esmero, diligencia y estricto celo profesional. La querellada violó la fe pública notarial por no cerciorarse de que los instrumentos públicos cumplían con todas las solemnidades que exige la ley.

De otra parte, al examinar las escrituras, la querellada se percató de que estas adolecían de ciertos defectos. Sin embargo, entendió que los defectos podían ser luego subsanados por un acta de subsanación y procedió a otorgar las escrituras. Cuando un notario autoriza un documento presuntamente da fe y asegura que ese documento cumple con todas las formalidades que exige la ley. **Una vez el notario se percata que la escritura no cumple con las formalidades que exige la Ley Notarial, *supra*, deberá abstenerse de autorizar la misma. El notario debe proceder a corregir los defectos antes de otorgar la escritura. Si el notario, teniendo**

**conocimiento de los defectos, no los corrige antes de autorizar la escritura, estaría violando la fe pública notarial.** Como sabemos, la propia Ley Notarial, *supra*, dispone los mecanismos para corregir los defectos de los cuales puedan adolecer los instrumentos públicos. El notario debe seguir estrictamente lo dispuesto en estos mecanismos. Ahora bien, estos mecanismos fueron creados para utilizarse cuando el notario percibe los defectos luego de autorizar los instrumentos públicos.[33] Una vez la licenciada Vázquez Pardo se percató de los defectos que contenían las escrituras debió corregir los defectos antes de proceder a otorgar las mismas.

Claramente, las escrituras no cumplían con la Ley Notarial, *supra*, y, por lo tanto, la querellada debió abstenerse de otorgarlas. En ambas escrituras se omitieron las advertencias legales expresas sobre los efectos de la adquisición de una partición indivisa en una finca según requerido por el Art. 15(g) de la Ley Notarial, *supra,* las advertencias sobre el estado de las cargas de las propiedades y sobre el hecho de que existían transacciones previas realizadas por Nakato, Inc. relativas a otras dos escrituras de dación en pago. Ambas escrituras contenían guarismos en fechas y en cantidades referentes a hipotecas, y ninguna contenía el valor de las propiedades. Además, la escritura de dación en pago adolecía del segundo apellido de uno de

---

[33] *In re Rivera Vázquez*, 155 D.P.R. 267, 279 (2001).

los comparecientes, no tenía el número de la escritura, no hizo constar que los otorgantes debían otorgar una escritura de rectificación para asignar el valor de las propiedades y la querellada no llenó los espacios en blancos. Por otro lado, la escritura de venta judicial contenía una nota de saca que no contenía el nombre de a quién se hizo la copia. La licenciada Vázquez Pardo incurrió en conducta que acarrea una sanción disciplinaria al apartarse de cumplir con los requisitos de la Ley Notarial, *supra.*

La licenciada Vázquez Pardo alega como defensa que no actuó con mala fe ni con intención de engañar. No obstante, la doctrina ha dispuesto que no es requisito que el notario haya obrado de mala fe, deliberadamente o con la intención de engañar. Debido a la importancia que tiene la fe pública notarial, estará sujeto a sanción disciplinaria aquel abogado que infrinja el Art. 2 de la Ley Notarial, *supra*, y el Canon 35 del Código de Ética Profesional, *supra*, sin importar si actuó de manera intencional o no.

No obstante lo anterior, es importante señalar que la licenciada Vázquez Pardo cumple con la mayoría de los factores atenuantes que esta Curia ha establecido para tomar en consideración al momento de determinar la sanción disciplinaria. En primer lugar, la querellada goza de una reputación intachable y es respetada entre los miembros de la profesión legal. Además, ésta

constituye la primera falta de la licenciada Vázquez Pardo y no existen quejas, querellas o reclamaciones pendientes. Cabe señalar, que los quejosos tampoco sufrieron daño pecuniario alguno por la actuación u omisión de la querellada. Por otro lado, aunque hemos mencionado que para infringir la fe pública no es necesario que se haya actuado de mala fe ni con intención de engañar, si se puede considerar este hecho como un factor atenuante para determinar la sanción disciplinaria. Así las cosas, en el caso de autos, podemos tomar en consideración que la querellada no actuó de mala fe ni con intención de engañar a los quejosos. Finalmente, es menester destacar, que la licenciada Vázquez Pardo se sometió al proceso disciplinario, cumplió oportunamente con los requerimientos de este Tribunal, y aseguró que la conducta por la cual hoy es disciplinada no se volvería a repetir.

**IV**

Por los fundamentos expuestos censuramos enérgicamente la conducta de la licenciada Vázquez Pardo. De igual forma, se le apercibe que de repetirse esta conducta estará sujeta a sanciones disciplinarias mucho más severas.

Se dictará sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Edith E. Vázquez Pardo          CP-2010-13          Conducta
                                                    Profesional


SENTENCIA

San Juan, Puerto Rico, a 27 de junio de 2012.

Por los fundamentos expuestos en la Opinión *Per Curiam* que antecede, la cual se hace formar parte íntegra de la presente Sentencia, se censura enérgicamente la conducta de la Lcda. Edith E. Vázquez Pardo. De igual forma, se le apercibe que de repetirse esta conducta estará sujeta a sanciones disciplinarias mucho más severas.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Jueza Asociada señora Pabón Charneco y el Juez Asociado señor Rivera García suspenderían a la Lcda. Edith E. Vázquez Pardo del ejercicio de la notaría por un término no menor de seis meses. El Juez Presidente señor Hernández Denton y la Juez Asociada señora Rodríguez Rodríguez no intervinieron.


                    Aida Ileana Oquendo Graulau
                    Secretaria del Tribunal Supremo