Versión para imprimir

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re:<br><br>Melvín I. Martínez Almodovar | 2011 TSPR 21<br><br>180 DPR ____ |

Número del Caso: CP-2008-19

Fecha: 1 de febrero de 2011

Oficina del Procurador General:

      Lcda. Minnie H. Rodríguez
      Procuradora General Auxiliar

Abogado del Peticionario:

      Lcdo. Pedro Malavet Vega

Materia: Conducta Profesional

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Melvín I. Martínez Almodóvar

CP-2008-0019

PER CURIAM

En San Juan, Puerto Rico, a 1 de febrero de 2011.

El procedimiento disciplinario de marras nos brinda la oportunidad de expresarnos sobre la norma pautada en In re: Francis Pérez Riveiro, 2010 T.S.P.R. 230, 180 D.P.R. ___ (2010), y analizar si los hechos particulares de autos ameritan que censuremos enérgicamente a un abogado cuya conducta como notario infringió la Regla 5 del Reglamento Notarial. 4 L.P.R.A. Ap. XXIV, R.5.

I

El 27 de febrero de 1991, el Sr. Miguel Ángel Cancel Rosado suscribió un contrato de arrendamiento con el Sr. José Antonio Cancel Pagán. Mediante dicho contrato el señor Cancel

Rosado le arrendó al señor Cancel Pagán una propiedad ubicada en el Municipio de Cabo Rojo a razón de $150 mensuales. Diez (10) años más tarde el señor Cancel Rosado le cursó una carta

al señor Cancel Pagán anunciando un aumento de renta, a razón de $350 mensuales, con el cual el señor Cancel Pagán incumplió. Así, luego de cursar varias misivas adicionales, las cuales también fueron ignoradas, el señor Cancel Rosado le expresó al señor Cancel Pagán que no deseaba renovar el contrato de arrendamiento. Le solicitó, además, que desalojara la propiedad arrendada.

Posteriormente, al ver que el señor Cancel Pagán incumplía con el pago de renta anunciado y con el desalojo solicitado, el 4 de octubre de 2001, el señor Cancel Rosado, asistido por su sobrina Lissa V. Cancel Pagán, presentó una demanda ante el Tribunal de Primera Instancia en contra del señor Cancel Pagán sobre desahucio y falta de pago de cánones de arrendamiento. En la primera vista señalada el demandado compareció representado por el Lcdo. Melvin I. Martínez Almodóvar,[1] quien solicitó que se le permitiera contestar la demanda y que se señalara una segunda vista.

El 31 de enero de 2002, el señor Cancel Pagán presentó su contestación.[2] En ella alegó que había

---

[1] El licenciado Martínez Almodóvar prestó juramento como abogado el 2 de febrero de 1990, y como notario el 10 de mayo de 1990.

[2] Aun cuando **no surge del expediente moción de renuncia** alguna, esta contestación fue presentada por el Lcdo. Nelson Vélez Lugo.

adquirido la propiedad inmueble objeto del pleito de desahucio mediante una escritura de compraventa otorgada por las partes el 9 de junio de 2001.

Así las cosas, el 1 de febrero de 2002, se celebró una segunda vista. Ese día el señor Cancel Pagán también compareció representado por el licenciado Martínez Almodóvar. En esta vista las partes solicitaron que el procedimiento se convirtiera en uno ordinario y que se consolidara con una acción de reivindicación y de nulidad de escritura de compraventa que el señor Cancel Rosado había presentado el 5 de diciembre de 2001. En esta segunda reclamación el señor Cancel Rosado adujo que el licenciado Martínez Almodóvar obvió dar fe de la entrega del precio de compraventa y que en unión al señor Cancel Pagán incurrió en conducta dolosa con el propósito de apropiarse ilegalmente del inmueble objeto del contrato de compraventa.[3] Ambos pleitos fueron consolidados.

Luego de los trámites procesales de rigor, el 14 de febrero de 2006, el Tribunal de Primera Instancia dictó sentencia. En ella, aparte de desestimar *sub silentio* todas las alegaciones vertidas en contra del licenciado Martínez Almodóvar, el foro primario declaró Con Lugar las acciones de desahucio y de reivindicación como también

---

[3] En específico, en esta reclamación sobre reivindicación y nulidad de contrato, se incluyó también como codemandado al licenciado Martínez Almodóvar. En su contra se alegó que al otorgar la escritura de compraventa, objeto de ambos pleitos, obvió dar fe del precio de compraventa y que, junto con el codemandado señor Cancel Pagán, incurrió en conducta dolosa cuyo fin era apropiarse ilegalmente del inmueble objeto del contrato de compraventa.

decretó la nulidad de la escritura de compraventa por adolecer ésta de consentimiento y causa. Consecuentemente, condenó al señor Cancel Pagán al pago de las rentas atrasadas.

Inconformes con esta determinación, el señor Cancel Pagán acudió ante el Tribunal de Apelaciones, quien confirmó el dictamen emitido por el foro primario. Inconforme aún, el señor Cancel Pagán presentó un recurso de *certiorari* ante este Tribunal. Analizado dicho recurso, el 10 de noviembre de 2006, emitimos una resolución en donde lo declaramos No Ha Lugar y, además, le referimos el caso a la Directora de la Oficina de Inspección de Notarías, en adelante ODIN, para que investigara y rindiera un informe sobre la conducta profesional del licenciado Martínez Almodóvar.

En cumplimiento con nuestra encomienda, el 17 de agosto de 2007, la ODIN presentó un escrito intitulado Comparecencia Especial. En dicho escrito informó, entre otras cosas, que de los documentos referidos se desprendía que al momento de otorgarse la escritura de compraventa el señor Cancel Rosado se encontraba incapacitado y senil por padecer de Alzheimer. A esos efectos, la ODIN indicó que el licenciado Martínez Almodóvar actuó en común acuerdo con el señor Cancel Pagán para defraudar al señor Cancel Rosado.

El 13 de diciembre de 2007, emitimos otra resolución. En ella le referimos el asunto al Procurador General para

que presentara la querella correspondiente en contra del licenciado Martínez Almodóvar. Así pues, el 9 de septiembre de 2008, el Procurador General presentó una querella. En ella le imputó al licenciado Martínez Almodóvar la comisión de los siguientes cargos:

**Primer Cargo:** el licenciado Martínez Almodóvar violó la fé pública notarial al otorgar un documento público en donde uno de los otorgantes estaba incapacitado de dar su consentimiento y en donde no hubo causa para el negocio de la compraventa.

**Segundo Cargo:** el licenciado Martínez Almodóvar violentó los principios enunciados en el Canon 35 de Ética Profesional, 4 L.P.R.A. Ap. IX, C.35, al otorgar un documento público ausente de consentimiento y causa, por ende simulado. El consignar hechos que no son ciertos en el documento anulado por el Tribunal de Primera Instancia atenta contra el deber de sinceridad y honradez del notario.

**Tercer Cargo:** el licenciado Martínez Almodóvar violentó los principios contenidos en el Canon 38 de Ética Profesional, supra, al no esforzarse al máximo de su capacidad en la exaltación del honor y la dignidad de la profesión que practica. Esto al consignar en un documento notarial hechos falsos.

Vista la querella sometida por el Procurador General y la contestación presentada por el licenciado Martínez Almodóvar, el 30 de enero de 2009, emitimos otra resolución en la cual nombramos a la Lcda. Eliadis Orsini Zayas como Comisionada Especial. Ello para que, en presencia de las partes, recibiera prueba y nos rindiera un informe con sus determinaciones de hechos y las recomendaciones que estimara pertinente.

Luego de celebrar múltiples vistas sobre el asunto y una inspección ocular, el 1 de diciembre de 2009, la

Comisionada Especial rindió su informe. En dicho informe concluyó que no se había demostrado, mediante prueba clara, robusta y convincente, que el licenciado Martínez Almodóvar hubiese incurrido en la conducta impropia imputada en la querella.

Sin embargo, la Comisionada añadió que el licenciado Martínez Almodóvar sí había incurrido en conducta impropia distinta a la imputada, la cual iba en contrario a la Regla 5 del Reglamento Notarial,[4] y los cánones 35 y 38 de Ética Profesional.[5] A esos efectos, expresó que del expediente de autos y de la prueba desfilada ante ella se desprendía claramente que el licenciado Martínez Almodóvar había comparecido en dos (2) ocasiones como representante legal del señor Cancel Pagán en los pleitos antes descritos luego de fungir como notario y otorgar la escritura de compraventa objeto de ambos pleitos. Además, la Comisionada indicó que en la referida escritura pública se habían incluido hechos que no eran ciertos.

Posteriormente, el licenciado Martínez Almodóvar presentó su contestación al informe de la Comisionada. En su contestación, el querellado aceptó en su totalidad el referido informe por entender que era uno "equilibrado, ponderado y ecuánime". Por ello, contando con la comparecencia de ambas partes, procedemos a resolver.

---

[4] 4 L.P.R.A. Ap. XXIV, R.5.

[5] 4 L.P.R.A. Ap. IX, C.35, C.38.

II

Como principio rector del Derecho Notarial todo notario está inexorablemente vinculado al estricto cumplimiento de la Ley Notarial de Puerto Rico, 4 L.P.R.A. § 2001 *et seq.*, y los Cánones de Ética Profesional, 4 L.P.R.A. Ap. IX. Su inobservancia con una de estas fuentes de obligaciones y deberes implica –ineludiblemente- la acción disciplinaria correspondiente; no sólo en su función como notario sino también como abogado. In re: Capestany Rodríguez, 148 D.P.R. 728, 733 (1999). "Esto es así ya que en el notario, por su condición de abogado[,] se funden dos (2) facetas esenciales en la administración de la justicia". *Íd.* La primera de ellas, la que surge de su condición como profesional del Derecho, lo instruye en la técnica jurídica y capacita para dar consejos y servir de guía a todo interesado. "La segunda faceta, la de notario, lo convierte en un funcionario público investido de autoridad y con capacidad autenticadora y legalizadora en el plano de las relaciones privadas". *Íd.* Además, esta segunda faceta impone a los actos que dicho notario "ve y oye –*vidit et audit*- una eficacia autenticadora cubierta con una presunción de veracidad, producto neto que parte del supuesto de un leal de los requisitos y las formalidades de ejercer con fidelidad su encomienda". *Íd.*, págs. 733-734. *Véase*, *además*, In re: Colón Muñoz, 131 D.P.R. 121 (1992); In re: Cruz Ramos, 127 D.P.R. 1005 (1991).

A. Fe Pública Notarial

El Artículo 2 de la Ley Notarial de Puerto Rico, 4 L.P.R.A. § 2002, consagra el principio de la fe pública notarial. Dicho artículo dispone lo siguiente:

> El notario es el profesional de Derecho que ejerce una función pública, autorizado para dar fe y autenticidad conforme a las leyes de los negocios jurídicos y demás actos y hechos extrajudiciales que ante él se realicen, sin perjuicio a lo dispuesto en las leyes especiales. Es su función recibir e interpretar la voluntad de las partes, dándole forma legal, redactar las escrituras y documentos notariales a tal fin y conferirle autoridad a los mismos. La fe pública al notario es plena respecto a los hechos que, en el ejercicio de su función personalmente ejecute o compruebe y también respecto a la forma, lugar, día y hora de otorgamiento. 4 L.P.R.A. § 2002.

La fe pública notarial de la cual están investidos todos los notarios constituye la espina dorsal de nuestro sistema notarial. In re: Rivera Aponte, 169 D.P.R. 738, 741 (2006); In re: Tejada Rivera I, 155 D.P.R. 175, 180 (2001); In re: Feliciano Ruiz, 117 D.P.R. 269, 275 (1986). Ésta le confiere al notario que la ejerce un carácter dual: (a) en la esfera de los hechos, la exactitud de lo que el notario ve, oye o percibe por sus sentidos; y (b) en la esfera del Derecho, autenticidad y fuerza probatoria a las declaraciones de voluntad de las partes en el instrumento público redactado conforme a su juicio sobre los preceptos del ordenamiento jurídico para la validez y eficacia del acto o contrato formalizado, y sobre la identidad y capacidad de las partes. 4 L.P.R.A. Ap. XXIV,

R.2. *Véanse*, *además*, <u>In re: Cruz Ramos</u>, 127 D.P.R. 1005 (1991); <u>In re: Cruz Cruz</u>, 126 D.P.R. 448 (1990).

Más aun, por la importancia que tiene la fe pública notarial dentro del tráfico de los bienes jurídicos, "el notario tiene que ser en extremo cuidadoso y debe desempeñar su ministerio con esmero, diligencia y estricto celo profesional". <u>In re: Rivera Vázquez</u>, 155 D.P.R. 267, 277-278 (2001). *Véase*, *además*, <u>In re: González Maldonado</u>, 152 D.P.R. 871 (2000). Ello, pues se presume que "un documento notarial avalado por la dación de fe brinda confianza de que los hechos jurídicos y las circunstancias que acredita el notario fueron percibidos y comprobados con sus sentidos o ejecutados por él". <u>In re: Rivera Aponte</u>, *supra*, págs. 741-742; <u>In re: Feliciano Ruiz</u>, *supra*, pág. 275. *Véase*, *además*, <u>In re: Vera Vélez</u>, 148 D.P.R. 1, 7 (1999). Precisamente, es esta presunción de veracidad y legitimidad la que brinda certeza, garantía y eficacia al documento notarial.

Así pues, la fe pública notarial en nuestro sistema jurídico es de tan alta magnitud e importancia que "no es necesario que el notario falte a la verdad intencionalmente para que incurra en una violación a ella". <u>In re: Rivera Vázquez</u>, *supra*, pág. 278. Consecuentemente, "el notario que [intencionalmente o no] falta a la verdad en el otorgamiento de un instrumento público no sólo quebranta la fe pública notarial, sino que socava la integridad de la profesión legal y viola su

deber de ser sincero y honrado", conforme a lo dispuesto en el Canon 35 de Ética Profesional. *Íd.*, pág. 277. *Véase*, *además*, <u>Feliciano v. Ross</u>, 165 D.P.R. 649, 658 (2005) (*citando a* P. Malavet Vega, <u>Manual de Derecho Notarial Puertorriqueño</u>, Santo Domingo, Ed. Corripio, 1988). Por ello el notario siempre tiene que circunscribirse a la verdad y actuar de conformidad con la ley **en todo momento**. *Íd.*

En cuanto a la obligación del notario de dar fe sobre la capacidad de los otorgantes, el inciso (e) del Artículo 15 de la Ley Notarial de Puerto Rico indica que la escritura pública debe contener "la fe expresa del notario … de que a su juicio éstos tienen la capacidad legal necesaria para otorgar el acto o contrato de que se trata…". 4 L.P.R.A. § 2033(e). Así, en el descargo de su encomienda, el notario tiene el deber de calificar la capacidad de las partes. <u>In re: Feliciano Ruiz</u>, *supra*, pág. 275. "La calificación de la capacidad viene impuesta por la naturaleza y la finalidad del instrumento público: se trata de un requisito que conceptual y lógicamente viene impuesto *ab initio* para conseguir la eficacia del documento y del acto documentado". E. Giménez-Arnau, <u>Derecho Notarial</u>, Pamplona, Eds. Univ. Navarra, 1976, pág. 527.

La capacidad de los otorgantes guarda correspondencia lógica con el consentimiento de los contratantes, requisito sine qua non de los contratos. La regla general

es que su existencia surja con la comparecencia y presencia de la persona ante el notario, la excepción es el mandato o poder.  In re: Feliciano Ruiz, *supra*, pág. 276.  A esos efectos, la profesora Torres Peralta, en su obra sobre el Derecho Notarial Puertorriqueño, enuncia lo siguiente:

> Es indispensable dar fe de la capacidad legal de los otorgantes, como requisito para proceder al otorgamiento y autorización de un instrumento publico.  La Ley requiere que el Notario haga constar en la escritura que, a su juicio, los otorgantes tienen la capacidad legal necesaria para el otorgamiento del instrumento.  Tal aseveración **ha de estar basada en un juicio informado y sabio, no en un acto caprichoso e infundado de parte del Notario.**
>
> La aseveración que a ese efecto se haga en la escritura pública **estará basada en los dichos de cada uno de los otorgantes El Notario, no obstante, tomará en cuenta el conocimiento que tiene cada otorgante, así como su capacidad de observación y de su percepción personal y si necesario, la investigación que debe efectuarse en las circunstancias.**  Este requisito se extiende, de igual manera, al compareciente representante en una escritura pública en que dicho otorgante comparezca como mandatario, agente, apoderado o comisionista y en toda otra capacidad representativa.  S. Torres Peralta, El Derecho Notarial Puertorriqueño, Ed. especial, San Juan, Pubs. STP, Inc., 1995, sec. 8.27. (Énfasis nuestro).

En Feliciano v. Ross, *supra*, pág. 658, expresamos que "[e]s deber del notario que autoriza el otorgamiento de una escritura hacer las averiguaciones mínimas que requieren las normas de la profesión".  *Íd.*, *citando a* In re: Peña Clós, 135 D.P.R. 590, 601 (1994).  En ese sentido, en In re: Davidson Lampón, 159 D.P.R. 448 (2003), indicamos que debido a que "la función del notario

trasciende la de un autómata legalizador de firmas y penetra al campo de la legalidad de la transacción que ante él se concreta", al autorizar una escritura el notario debe: **(1) indagar la voluntad de los otorgantes**; (2) formular la voluntad indagada; **(3) investigar ciertos hechos y datos de los que depende la eficacia o validez del negocio**; y (4) darles a los otorgantes las informaciones, aclaraciones y advertencias necesarias para que comprendan el sentido, así como los efectos y consecuencias del negocio, y se den cuenta de los riesgos que corren en celebrarlo.[6] In re: Davidson Lampón, *supra*, pág. 461, *citando a* Chévere v. Cátala, 115 D.P.R. 432, 438 (1984). *Véase*, *además*, Cintrón Ramos v. Borrás Marín, 144 D.P.R. 91 (1997).

B. Canon 35

El Canon 35 de Ética Profesional, *supra*, impone un deber general de sinceridad y honradez sobre todos los abogados admitidos a practicar la profesión legal. In re: Irizarry Vega, 2009 T.S.P.R. 132, 176 D.P.R. ___ (2009); In re: Padilla Rodríguez, 145 D.P.R. 536 (1998); In re: Franco Rivera, Masini Soler, 134 D.P.R. 823 (1993). A esos efectos, el referido canon indica lo siguiente:

> La conducta de cualquier miembro de la profesión legal ante los tribunales, para con sus representados y en relaciones con sus compañeros debe ser sincera y honrada.

---

[6] Sobre la obligación del notario en investigar los antecedentes registrales del negocio jurídico que autoriza, *véase* Chévere v. Cátala, supra, págs. 442-443, *citando a* P. Ávila Álvarez, Estudios de Derecho Notarial, 4ta ed., Madrid, Ed. Montecorvo, 1973, págs. 402-403; In re: Ramos Meléndez y Cabiya Ortiz, 120 D.P.R. 796 (1988).

> No es sincero ni honrado el utilizar medios que sean inconsistentes con la verdad ni se debe inducir al juzgador a error utilizando artificios o una falsa relación de los hechos o del derecho. Es impropio variar o distorsionar las citas jurídicas, suprimir parte de ellas para transmitir una idea contraria a la que el verdadero contexto establece u ocultar alguna que le es conocida.
>
> El abogado debe ajustarse a la sinceridad de los hechos al examinar los testigos, al redactar afidávit u otros documentos, y al presentar causas. El destruir evidencia documental o facilitar la desaparición de evidencia testifical en un caso también es altamente reprochable. 4 L.P.R.A. Ap. IX, C. 35.

Como es sabido, el deber general contenido en el Canon 35 de Ética Profesional, *supra*, se exige en aras de preservar el honor y la dignidad de la profesión, ya que el compromiso del abogado con la verdad es uno **incondicional e ineludible**. In re: Irizarry Vega, *supra*, pág. 5; In re: Fernández de Ruiz, 167 D.P.R. 661 (2006). Conforme a ello, hemos expresado que la verdad es un atributo inseparable del ser abogado, y sin ésta, la profesión jurídica no podría justificar su existencia. In re: Irizarry Vega, *supra*, pág. 5; In re: Busó Aboy, 166 D.P.R. 49 (2005).

En específico, en cuanto a la práctica notarial se refiere, en In re: Tejada Rivera I, *supra*, afirmamos "que cualquier hecho aseverado en un instrumento público por un notario que no concuerde con la verdad constituye una violación al Canon 35 del Código de Ética Profesional, *supra*, **independientemente de si hubo intención de faltar a la verdad**". In re: Tejada Rivera I, *supra*, pág. 182,

*citando a* <u>In re: Astacio Caraballo</u>, 149 D.P.R. 790 (2000). *Véase*, *además*, <u>In re: Machargo Barreras</u>, 161 D.P.R. 364, 372 (2004).

### C. Canon 38

El Canon 38 de Ética Profesional, *supra*, impone sobre todos los abogados admitidos a ejercer la profesión legal el deber de esforzarse al máximo para exaltar el honor y dignidad de su profesión. En lo pertinente, dicho Canon indica que todo "abogado deberá esforzarse, al máximo de su capacidad, en la exaltación del honor y dignidad de su profesión, aunque el así hacerlo conlleve sacrificios personales y debe evitar hasta la apariencia de conducta impropia…". 4 L.P.R.A. Ap. IX, C.38. <u>In re: Colón Ramery</u>, 133 D.P.R. 555, 562 (1993); <u>In re: Meléndez Pérez</u>, 104 D.P.R. 770, 772 esc. 1 (1976); <u>In re: Cancio Sifre</u>, 106 D.P.R. 386, 398-399 (1977); <u>In re: Rojas Lugo</u>, 114 D.P.R. 687, 691 (1983); <u>In re: Roldán Figueroa</u>, 106 D.P.R. 4 (1977).

Cónsono con lo anterior, hemos resuelto que "la responsabilidad moral y ética que rigen nuestra ilustre profesión, obliga a todo abogado a examinar su comportamiento continuamente". <u>In re: Rodríguez Vázquez</u>, 2009 T.S.P.R. 109, 176 D.P.R. ___. En ese sentido, reiteramos con ímpetu que "los abogados son el espejo donde se refleja la imagen de la profesión, por tal razón, éstos deben actuar con el más escrupuloso sentido de responsabilidad que impone la función social que ejercen".

In re: Rodríguez Vázquez, *supra*; In re: Quiñones Ayala, 165 D.P.R. 138 (2005).

D. *Quantum* de Prueba

En In re: Caratini Alvarado, 153 D.P.R. 575 (2001) (adoptando el criterio establecido en P.P.D. v. Admor. Gen. De Elecciones, 111 D.P.R. 199 (1981)), resolvimos que el *quantum* de prueba requerido en los procesos disciplinarios es uno de "prueba clara, robusta y convincente, no afectada por reglas de exclusión ni a base de conjeturas". In re: Caratini Alvarado, *supra*, pág. 585; P.P.D. v. Admor. Gen. De Elecciones, *supra*, pág. 227. Así, aunque "el referido estándar de prueba no es susceptible de una definición precisa, la prueba clara, robusta y convincente ha sido descrita como aquella evidencia que produce en el juzgador de hechos una convicción duradera de que las contenciones fácticas son altamente probables". In re: Rodríguez Mercado, 165 D.P.R. 630, 641 (2005); Colorado v. New Mexico, 467 U.S. 310, 316 (1983). *Véase*, *además*, 2 McCormick on Evidence Sec. 340, pág. 425 (5ta ed. 1999).

Conforme a lo anterior, hemos resuelto que en los procedimientos disciplinarios la carga probatoria requerida es una más acuciosa que el *quantum* de prueba requerido en los procedimientos civiles ordinarios, "ya que en estos procesos está en juego el título de un abogado y, por ende, su derecho fundamental a ganarse su sustento". In re: Rodríguez Mercado, *supra*, pág. 641

(*citando a* <u>In re: Caratini Alvarado</u>, *supra*, pág. 585). Por ello, podemos concluir que el estándar de prueba clara, robusta y convincente es más alto y sólido que el de preponderancia de la prueba, pero menos exigente y riguroso que el de prueba más allá de duda razonable. <u>In re: Rodríguez Mercado</u>, *supra*, pág. 641. *Véase*, *además*, <u>In re: Soto López</u>, 135 D.P.R. 642, (1994).

E. Debido Proceso de Ley

El debido proceso de ley, en su vertiente procesal, le impone al Estado la obligación de garantizar que la interferencia con el interés propietario o libertario del individuo se realice mediante un procedimiento justo y equitativo que respete la dignidad de los individuos. <u>Rivera Rodríguez & Co. v. Stowell Taylor</u>, 133 D.P.R. 881, 887-888 (1993). Los abogados tienen un interés propietario en el ejercicio de la profesión legal. <u>In re: Ríos Ríos</u>, 2008 T.S.P.R. 186, pág. 20, 175 D.P.R. ___ (2008). *Véase además*, <u>In re: Ruffalo</u>, 390 U.S. 544, 550 (1968). Por ello, los abogados son acreedores de las garantías de un debido proceso de ley en aquellos procedimientos disciplinarios en que esté en juego su licencia. *Íd.*

Como es sabido, las exigencias mínimas del debido proceso de ley incluyen el ser notificado adecuadamente de los cargos en su contra, la oportunidad de ser oído, y el derecho a contrainterrogar y a examinar la prueba documental y material presentada por la parte contraria.

In re: Ríos Ríos, *supra*, pág. 20; Salva Santiago v. Torres Padro, 171 D.P.R. 332, 343 (2007). *Véase además*, Rivera Rodríguez & Co. v. Stowell Taylor, *supra*, pág. 889.

De conformidad con lo anterior, la Regla 14 del Reglamento del Tribunal Supremo, en su inciso (f), reconoce un procedimiento de notificación al abogado cuando se presenta una querella en su contra.[7] 4 L.P.R.A. Ap. XXI-A, R.14(f). Cuando ello ocurre, el Secretario entra la querella en el libro de presentaciones correspondiente e inmediatamente expide un mandamiento al abogado involucrado. 4 L.P.R.A. Ap. XXI-A, R. 14. En éste, se le requiere al abogado que conteste la querella dentro de los quince (15) días de su notificación. El Alguacil procede entonces a notificar la querella y el mandamiento. Además, cuando no es posible notificar personalmente al querellado, el Alguacil tiene el deber de informar tal hecho al Tribunal. *Íd*. En ese caso, el Tribunal puede "ordenar que se le notifique dejando los documentos en su oficina, durante horas regulares de trabajo, en un sobre con su debida dirección". *Íd*. Cuando no se puede notificar de esta forma, el Secretario notifica al abogado por correo certificado con acuse de recibo a la dirección que obra en el Registro de Abogados del Tribunal. Dicha notificación es suficiente para todos

---

[7] El inciso (j) de la Regla 14 del Reglamento del Tribunal Supremo también reconoce que la parte querellada tendrá derecho a confrontar a los testigos en su contra durante la vista; contrainterrogarlos; examinar prueba documental o material que se presente en su contra; presentar testigos; y presentar prueba documental y material a su favor, entre otros. 4 L.P.R.A. Ap. XXI-A, R. 14(j).

los efectos del Reglamento de este Tribunal aunque la carta sea devuelta.[8] *Íd.*

Por su parte, en In re: Ruffalo, 390 U.S. 544 (1968), el Tribunal Supremo de Estados Unidos reconoció, expresamente, que durante los procedimientos disciplinarios un abogado tiene el derecho constitucional al debido proceso de ley. En esta ocasión se le imputaron doce (12) cargos disciplinarios al abogado mediante querella. Sin embargo, al tercer día de la vista disciplinaria la Junta de Comisionados sobre Quejas y Disciplina de Ohio añadió un cargo número trece (13), basado, exclusivamente, en información obtenida durante la vista evidenciaria. *Íd.*, pág. 546. El abogado fue suspendido de la práctica legal debido, en parte, al cargo número trece (13).

El Tribunal Supremo de Estados Unidos reconoció que los procedimientos disciplinarios instados en contra de los abogados no son de naturaleza civil ni penal, sino que se trata de procedimientos de naturaleza cuasi-penal. *Íd.*, pág. 551. Así, luego de evaluar detenidamente las circunstancias del caso, concluyó que el abogado-querellado no fue notificado adecuadamente del nuevo cargo y que, como parte del debido proceso de ley, el abogado tenía derecho a una notificación adecuada de ese cargo el

---

[8] *Íd.* La Regla 14(g) del Reglamento del Tribunal Supremo, 4 L.P.R.A. Ap. XXI-A, R. 14(g), dispone que las querellas presentadas por el Procurador General y por el Colegio de Abogados de Puerto Rico, también deben cumplir con el mencionado proceso de notificación.

cual fue identificado luego de iniciado el trámite disciplinario. *Íd.*

En In re: Roca Rosselli, 164 D.P.R. 380 (2005), sin embargo, adoptamos una postura distinta. En aquella ocasión, el Procurador General presentó una querella en contra de un abogado imputándole, únicamente, haber violentado los principios de diligencia e información contenidos en el Canon 18 de Ética Profesional. 4 L.P.R.A. Ap. IX, C.18. Así, nombramos un Comisionado Especial quien celebró una vista para dilucidar la querella.

Luego de celebrada la vista, el Comisionado Especial sometió su informe. Concluyó que, "a pesar de que el Procurador General tan sólo imputó al licenciado Roca una violación al Canon 19 [sic], [4 L.P.R.A. AP. IX, C.19], la conducta imputada también [configuró] prohibiciones al Canon 18 [sic]". Ello, debido a que el cargo presentado por el Procurador "quedó enmendado por la prueba presentada por el propio querellado". *Íd.*, págs. 385-386.

Evaluadas las circunstancias ante nos, acogimos los planteamientos del Comisionado Especial y resolvimos que el abogado-querellado incurrió en conducta impropia contraria a los Cánones 18 y 19 de Ética Profesional, *supra*. Ello, aun cuando la violación al Canon 19 no fue imputada en la querella sino que surgió de la prueba presentada en la vista celebrada por el Comisionado

Especial.[9]  Sin embargo, en aquel entonces no discutimos si dicho proceder era contrario al debido proceso de ley y a la norma pautada en In re: Ruffalo, *supra*.

Posteriormente, en In re: Marini Román, 165 D.P.R. 801 (2005), resolvimos que el querellado incurrió en conducta impropia contraria a los dos (2) cargos imputados en la querella, los cuales estuvieron basados en el Criterio General de los deberes de los abogados para con los tribunales y el Canon 35.  Además, indicamos que dicha conducta también era contraria al Canon 18, *supra*, a pesar que dicha violación no había sido imputada en la querella presentada por el Procurador General sino que surgió de la prueba desfilada ante la Comisionada Especial.  En apoyo a nuestra conclusión citamos la norma esbozada en In re: Roca Rosselli, *supra*.  In re: Marini Román, *supra*, pág. 812.[10]

Ahora bien, recientemente, en In re: Pérez Riveiro, 2010 T.S.P.R. 230, 180 D.P.R. ___ (2010), revocamos la norma adoptada In re: Roca Roselli, *supra*.  Al así hacerlo enfatizamos que "la práctica de enmendar la querella tácitamente a base de la prueba presentada para sancionar a un abogado por violaciones al Código de Ética Profesional que no fueron imputadas en la querella es

---

[9] El Juez Asociado señor Rivera Pérez disintió sin opinión escrita pero expresó que no era procedente disciplinar al querellado por la violación al Canon 19 pues no se presentó cargo alguno por el Procurador General "y porque, por imperativo del debido proceso de ley, estamos impedidos de hacerlo".  In re: Roca Roselli, 164 D.P.R. 380, 389 (2005).

[10] Los Jueces Asociados señor Rivera Pérez y señor Fuster Berlingeri no intervinieron.  *Íd.*, pág. 817.

incompatible con la naturaleza de los procedimientos disciplinarios de los abogados y viola el debido proceso de ley". In re: Pérez Riveiro, *supra*, pág. 8.

Como consecuencia de lo anterior, entendimos que no procedía imponerle sanciones disciplinarias al querellado por los cargos imputados que surgieron durante el trámite procesal de la querella, pues ello implicaba "negarle la oportunidad que [el querellado] por derecho tiene a preparar una defensa adecuada e impedirle, asimismo, velar por su sustento". *Íd.*, pág. 9. Aclaramos, sin embargo, que "nada de ello impedía que, de considerarlo apropiado, le ordenáramos al Procurador General investigar la nueva información recibida por el Comisionado para determinar si debe presentarse una nueva queja que inicie un procedimiento disciplinario separado, en el cual el abogado tenga la oportunidad de defenderse y traer prueba a su favor con relación a la conducta distinta a la considerada originalmente". *Íd.*, págs. 9-10.

No obstante lo anterior, la norma esbozada en In re: Pérez Riveiro, *supra*, no debe ser catalogada como irrestricta. "[El] debido proceso de ley se satisface siempre que se le provea al abogado querellado la oportunidad de **responder y defenderse** de los cargos imputados y notificados, así como de las teorías en las que se basen". *Íd.*, pág. 7 (*citando a* Zauderer v. Office of Disciplinary Counsel, 471 U.S. 626, 654-655 (1985)).[11]

---

[11] (Énfasis nuestro).

Así, aclaramos que cuando del expediente bajo estudio surja que -en cuanto a la conducta impropia identificada luego de iniciado el procedimiento disciplinario- al abogado-querellado se le ha (1) notificado adecuadamente de la conducta impropia adicional; (2) brindado la oportunidad de presentar prueba a su favor; (3) permitido examinar la prueba presentada en su contra y (4) contrainterrogar los testigos presentados por la parte contraria, el Tribunal podrá, si lo estima apropiado, evaluar y atender dichas alegaciones adicionales. Sólo así protegeremos efectivamente las garantías constitucionales del abogado-querellado y no se menoscabará su oportunidad de preparar adecuadamente su defensa ni se le impedirá velar por su sustento.

En otras palabras, si durante el trámite de un procedimiento disciplinario se identifica conducta impropia adicional a la imputada ésta no podrá ser dirimida dentro de ese mismo procedimiento disciplinario. In re: Pérez Riveiro, *supra*. En estas instancias, como norma general, el Tribunal deberá ordenarle al Procurador General investigar la nueva conducta para que determine si debe presentarse una nueva queja que inicie un nuevo procedimiento disciplinario, separado y distinto al procedimiento en donde la conducta adicional impropia fue identificada. Así, el abogado-querellado tendrá la oportunidad de defenderse y traer prueba a su favor en relación a la conducta impropia adicional.

Ahora bien, a modo de excepción, en las instancias en donde el expediente ante la consideración del Tribunal refleje que en cuanto a la conducta impropia adicional al querellado se le han salvaguardado todas las garantías que emanan del debido proceso de ley, el Tribunal podrá -si lo estima apropiado- evaluar y atender dicha conducta adicional dentro del mismo procedimiento disciplinario, sin necesidad de referirla al Procurador General. Sólo así protegeremos efectivamente las garantías constitucionales del abogado-querellado y no se menoscabará su oportunidad de preparar adecuadamente su defensa ni se le impedirá velar por su sustento.

F. Regla 5 del Reglamento Notarial

Como norma general, la Regla 5 del Reglamento Notarial, 4 L.P.R.A. Ap. XXIV, R.5, establece que los notarios están impedidos de representar legalmente a cualquiera de las partes otorgantes en un pleito posterior mediante el cual se reclamen las prestaciones contenidas en el documento otorgado ante dicho notario. En lo pertinente al caso que nos ocupa, dicha regla indica lo siguiente:

> La práctica de la profesión de abogado puede ser en algunas ocasiones incompatible con la práctica de la notaría.
>
> **El notario autorizante de un documento público está impedido de actuar posteriormente como abogado de una de las partes otorgantes para exigir en un litigio contencioso las contraprestaciones a que se haya obligado cualquier otra parte en el documento otorgado ante él.**

> El notario está impedido de representar como abogado a un cliente en la litigación contenciosa y, a la vez, servir de notario en el mismo caso por el posible conflicto de intereses o incompatibilidades que puedan dimanar del mismo. 4 L.P.R.A. Ap. XXIV, R.5. (Énfasis nuestro).

La prohibición establecida por la Regla 5 del Reglamento Notarial, *supra*, no debe ser tomada livianamente. Su propósito es, entre otros, proteger la apariencia profesional de los notarios y evitar que su conducta como depositario de la fe pública notarial sea maculada por escepticismos de impropiedad y desconfianza. In re: Rojas Lugo, 114 D.P.R. 687 (1983); In re: Colón Ramery, 133 D.P.R. 555 (1995).

En armonía con lo anterior, en In re: Colón Ramery, *supra*, resolvimos que "un abogado-notario que reclama judicialmente en representación de una de las partes otorgantes de un documento, para exigir la contraprestación a la que se obligó la otra parte en el documento, da la falsa impresión de que siempre estuvo parcializado con la parte en representación de la cual reclama". *Íd.*, pág. 567. Añadimos que de permitirse tal práctica estaríamos ocasionándole un grave daño a la institución del notariado, a la fe pública notarial y, sobre todo, a la confianza que ha sido depositada en la profesión. *Íd.*

Posteriormente, en In re: Colón Ramery, 138 D.P.R. 793 (1995) (en reconsideración), aclaramos que la prohibición antes esbozada no aplica a las acciones *ex*

*parte*, a menos que ello esté expresamente prohibido por ley o doctrina jurisprudencial. *Íd.*, pág. 798. Añadimos que dicha normativa era una "consecuencia lógica del hecho de que, por su carácter no contencioso, en dichos procedimientos no existe la apariencia de parcialidad impropia…" pues "los procedimientos *ex parte* tienen como propósito dar validez jurídica a actos y manifestaciones consensuales de la voluntad privada". *Íd.*, *citando a* E. Escobar De la Riva, <u>Tratado de Derecho Notarial</u>, Ed. Marfil, S.A., 1957, págs. 27-28. De igual forma, y bajo fundamentos similares, en <u>In re: Matos Bonet</u>, 153 D.P.R. 296 (2001), resolvimos que los notarios están impedidos de otorgar documentos públicos relativos a propiedades que sean objeto de los litigios en los cuales participan como abogados. *Íd.*, pág. 301.

III

Como mencionáramos anteriormente, en la querella presentada por el Procurador General en contra del licenciado Martínez Almodóvar se le imputó incurrir en conducta impropia constitutiva de tres (3) cargos disciplinarios. Ante esta situación, la Comisionada Especial rindió un informe y concluyó que no se presentó prueba clara, robusta y convincente que sustentara la conducta profesional impropia imputada. Le asiste la razón. Veamos.

En cuanto al primer cargo, violación de la fe pública notarial debido a que el señor Cancel Rosado estaba

incapacitado para otorgar la escritura de compraventa, surge del expediente de autos que el 25 de abril de 2001, tan solo cuarenta y cinco (45) días antes de otorgar la escritura de compraventa, el señor Cancel Rosado otorgó un testamento abierto ante la notario Mónica Alpi Figueroa. Éste no ha sido impugnado ni anulado.

A esos efectos, durante las vistas celebradas por la Comisionada Especial, la licenciada Alpi Figueroa testificó que todas las gestiones para otorgar el testamento abierto fueron diligenciadas por el propio señor Cancel Rosado. Añadió que a su juicio no tenía la menor duda de que él estaba en plena capacidad, sin importar que estaba en silla de ruedas. Ello, porque, a parte de conocerlo personalmente, durante el otorgamiento del testamento ella le hizo preguntas sobre temas y asuntos del presente y pasado, a las cuales el señor Cancel Rosado respondió correctamente.

Igualmente, surge del expediente que días antes de otorgarse la referida escritura de compraventa el licenciado Martínez Almodóvar acudió a la residencia del señor Cancel Rosado para afinar los pormenores de la compraventa y pudo percatarse de su capacidad. Así, nos indica la Comisionada Especial, que el querellado observó, mientras el señor Cancel Rosado leía un viejo periódico regional de *La Parguera*, como éste le comentaba con gran precisión sobre varios errores contenidos en el artículo, el cual trataba sobre el origen de la familia Cancel del

Poblado. En específico, el señor Cancel Rosado le indicó al querellado, entre otras cosas, que el artículo estaba errado porque indicaba que la familia Cancel había llegado al Poblado como pescadores, cuando la realidad era que habían llegado como cuidadores de cerdos. Además, a preguntas del licenciado Martínez Almodóvar, el señor Cancel Rosado expresó que tenía interés en venderle la propiedad al señor Cancel Pagán porque no tenía hijos y éste había ayudado mucho a sus sobrinos.

Lo anterior, en unión a la totalidad de la prueba testifical y documental examinada, nos lleva a la misma conclusión alcanzada por la Comisionada Especial: durante el procedimiento disciplinario de autos no se presentó prueba clara, robusta y convincente tendente a demostrar la conducta impropia imputada en el primer cargo. El licenciado Martínez Almodóvar no estaba obligado a efectuar una investigación exhaustiva y pormenorizada sobre la capacidad y trasfondo mental del señor Cancel Rosado. Cintrón Ramos v. Registrador, 144 D.P.R. 91 (1997); In re: Caratini Alvarado, *supra*, pág. 583; In re: Machargo Barreras, *supra*, pág. 370-371; Feliciano v. Ross, *supra*, págs. 658-659. Más bien, de un análisis integral de la jurisprudencia antes señalada, el querellado -como custodio de la fe pública notarial- estaba obligado a hacer las averiguaciones mínimas necesarias que requieren las normas de la profesión para quedar plenamente convencido de la capacidad de los otorgantes. Entendemos,

pues, que el licenciado Martínez Almodóvar, al actuar como lo hizo y presentarse días antes en la casa del señor Cancel Rosado para detallar los pormenores de la referida escritura de compraventa y corroborar su capacidad, no violó la fe pública notarial. Su juicio y dación de fe sobre la capacidad del señor Cancel Rosado fue celosamente ejercida. *Véase*, *además*, Regla 32(5) del Reglamento Notarial, 4 L.P.R.A. Ap. XXIV, R.32(5).

A igual conclusión llegamos en cuanto a la conducta profesional impropia imputada en el segundo y tercer cargo. Ambos cargos gravitan sobre las alegaciones de fraude intencional vertidas por el señor Cancel Rosado en la demanda sobre reivindicación y nulidad de escritura de compraventa en contra del licenciado Martínez Almodóvar. Éstas fueron desestimadas *sub silentio* en la sentencia dictada por el Tribunal de Primera Instancia, la cual fue confirmada posteriormente por el Tribunal de Apelaciones.

Sin embargo, lo anterior no dispone completamente del asunto disciplinario ante nuestra consideración. Resta considerar si procede o no imponerle sanciones disciplinarias al licenciado Martínez Almodóvar por las alegadas violaciones a la Regla 5 del Reglamento Notarial, *supra*, y a los Cánones 35 y 38 de Ética Profesional, *supra*, identificadas durante el trámite disciplinario instado en su contra, y si dicha imposición es contraria al debido proceso de ley.

De ordinario, conforme la norma pautada en <u>In re:</u> <u>Pérez Riveiro</u>, *supra*, conducta profesional impropia identificada durante el transcurso de un procedimiento disciplinario no debe ser objeto de sanción disciplinaria dentro de ese mismo procedimiento. *Íd.*, pág. 9. Ahora bien, **las circunstancias particulares del caso de autos ameritan que apliquemos la excepción antes esbozada.**[12] Nos explicamos.

Como hemos mencionado, durante el procedimiento disciplinario de autos la Comisionada Especial identificó conducta impropia adicional a la imputada en la querella, la cual se aduce que es contraria a la Regla 5 del Reglamento Notarial, *supra*, y a los Cánones 35 y 38 de Ética Profesional, *supra*. A esos efectos, la Comisionada Especial aclaró en su informe, en cuanto a la conducta impropia adicional, que las garantías constitucionales que cobijan al querellado fueron debidamente salvaguardadas y que durante el transcurso del procedimiento disciplinario al querellado se le informó adecuadamente sobre el hallazgo de dicha conducta adicional y se le concedió la oportunidad de expresarse, de presentar prueba a su favor y de impugnar la prueba ofrecida en su contra. *Véase*, Informe de la Comisionada Especial, págs. 34-35.

---

[12] Nos llama la atención que en la Opinión Disidente emitida por nuestra compañera Jueza Asociada señora Fiol Matta no se haya mencionado referencia alguna sobre la circunstancia medular que movió a este Tribunal a pautar y aplicar la excepción antes mencionada: **el querellado Martínez Almodóvar no impugnó de forma alguna el informe rendido por la Comisionada Especial; por el contrario, lo catalogó como un informe equilibrado, ponderado y ecuánime.** Ello, en unión a los hallazgos y conclusiones de la Comisionada Especial, inclinó la balanza a favor del resultado aquí alcanzado.

Más aún, del expediente de autos surge que el propio querellado aceptó el informe de la Comisionada Especial y lo catalogó como un informe "equilibrado, ponderado y ecuánime" y que optó por no tomar acción alguna en cuanto la referida conducta adicional. Por ello, y debido a que durante todo el transcurso del procedimiento disciplinario de autos al querellado se le han protegido sus garantías constitucionales, procedemos a atender las alegaciones de conducta impropia adicional identificada por la Comisionada Especial. Se configura en esta ocasión la excepción antes mencionada.

En cuanto a la conducta contraria a la Regla 5 del Reglamento Notarial, *supra*, del expediente de autos se desprende claramente que el licenciado Martínez Almodóvar, luego de otorgar la escritura de compraventa, compareció en dos (2) ocasiones distintas -16 de noviembre de 2001 y 1 de febrero de 2002- como representante legal del señor Cancel Pagán en un pleito presentado por el señor Cancel Rosado para exigir el cumplimiento de las prestaciones convenidas en la referida escritura. En otras palabras, el querellado representó legalmente al señor Cancel Pagán en un litigio contencioso en el cual se exigía el cumplimiento de las contraprestaciones convenidas en una escritura de compraventa otorgada ante él. Ello constituye una clara violación a lo dispuesto en la Regla 5 del Reglamento Notarial, *supra*, y su jurisprudencia interpretativa. In re: Colón Ramery, 133 D.P.R. 555

(1995); In re: Colón Ramery, 138 D.P.R. 793 (1995) (en reconsideración).

Ahora bien, en cuanto a la conducta impropia adicional contraria a los Cánones 35 y 38, *supra*, la Comisionada Especial expresó en su informe que de la evidencia documental por ella aquilatada se desprende que en la escritura de compraventa otorgada por el licenciado Martínez Almodóvar no se especificó que la cuantía del negocio jurídico había sido entregada mediante cheque de gerente, sino que sólo se expresó que fue entregada mediante moneda de curso legal. Tal proceder, nos sugiere la Comisionada Especial, constituye una violación a los cánones 35 y 38 de Ética Profesional, *supra*. No le asiste la razón.

Un examen integral y detenido de nuestro ordenamiento notarial y su jurisprudencia interpretativa revela que los notarios están obligados a plasmar íntegramente la voluntad y pactos de los otorgantes en las estipulaciones de la escritura de compraventa que ante él se otorga. *Véase*, P. Malavet Vega, El Derecho Notarial en Puerto Rico, Ponce, Ed. Omar, 2010, pág. 170. Así, los notarios están obligados a consignar, entre otras cosas, el precio de venta pactado entre las partes otorgantes y la forma en que dicha cuantía es satisfecha. *Íd.* Colegimos que basta con indicar que el precio pactado en la escritura de compraventa fue satisfecho mediante moneda de curso legal, que es el equivalente a la moneda de los Estados Unidos de

América.  *Véase*, Torres v. Torres, 2010 T.S.P.R. 123, 179 D.P.R. ___ (2010), págs. 10-11.

IV

Finalmente, en numerosas ocasiones hemos expresado que al determinar una sanción disciplinaria se tomará en cuenta la reputación del abogado querellado en la comunidad, su historial profesional previo, si se trata de su primer procedimiento disciplinario, si el querellado ha aceptado los cargos imputados, su sincero arrepentimiento, si se trata de una conducta aislada, si actuó con ánimo de lucro y cualesquiera otras consideraciones que puedan servir como atenuantes o agravantes según los hechos particulares de cada caso.  In re: Bryan Picó y Vargas Hernández, 150 D.P.R. 1 (2000); In re: Quiñones Ayala, 165 D.P.R. 138 (2005).

Vemos, pues, que del expediente de autos surge que este ha sido el primer procedimiento disciplinario que se ha presentado en contra del licenciado Martínez Almodóvar durante los veinte (20) años que lleva ejerciendo la profesión legal.  Además, hemos notado que el querellado goza de buena reputación en la comunidad que reside y entre sus compañeros profesionales.

Por lo tanto, en esta ocasión limitaremos nuestra sanción disciplinaria a una censura enérgica.  La conducta desplegada por el licenciado Martínez Almodóvar infringió la Regla 5 del Reglamento Notarial, *supra*.  No obstante, le apercibimos al licenciado Martínez Almodóvar que de

incurrir en conducta impropia en el futuro podrá ser sancionado de forma más severa.

V

Por los fundamentos antes expuestos, censuramos enérgicamente al Lcdo. Melvin I. Martínez Almodóvar por haber incurrido en conducta impropia contraria a la Regla 5 del Reglamento Notarial, *supra*. Le apercibimos que de incurrir nuevamente en conducta profesional impropia podrá ser sancionado de forma más severa.

Se dictará sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Melvín I. Martínez Almodóvar

CP-2008-0019

SENTENCIA

En San Juan, Puerto Rico, a 1 de febrero de 2011.

Por los fundamentos expuestos en la Opinión *Per Curiam* que antecede, la cual se hace formar parte de la presente Sentencia, censuramos enérgicamente al Lcdo. Melvin I. Martínez Almodóvar por haber incurrido en conducta impropia contraria a la Regla 5 del Reglamento Notarial, *supra*. Le apercibimos que de incurrir nuevamente en conducta profesional impropia podrá ser sancionado de forma más severa.

Lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Jueza Asociada señora Fiol Matta disiente con opinión escrita. La Juez Asociada señora Rodríguez Rodríguez disiente sin opinión escrita.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re:*

CP-2008-19

Melvín  I.  Martínez

Opinión Disidente emitida por la Jueza Asociada señora Fiol Matta

En San Juan, Puerto Rico, a 1 de febrero de 2011.

Recientemente, reconocimos en In re Pérez Riveiro, 2010 T.S.P.R. 230, 180 D.P.R. ___ (2010), que se viola el derecho al debido proceso de ley cuando se sanciona a un abogado contra quien se ha presentado una querellada por actos que, aunque constituyan infracciones a los Cánones de Ética Profesional,[13] no se le han imputado en dicha querella. Esta norma recién pautada constituye un importante avance en la protección de los derechos constitucionales de los miembros de nuestra profesión involucrados

---

[13] 4 L.P.R.A. Ap. IX.

en procedimientos disciplinarios. El presente dictamen de
este Tribunal propone una excepción al citado caso, en aras
de agilizar el proceso ante este Foro y de añadir
flexibilidad al procedimiento disciplinario. La realidad es
que la decisión mayoritaria también abre una brecha
peligrosa por la cual se podrán ventilar los casos de forma
atropellada. Muestra de ello es, precisamente, este caso.
Por entender que la decisión que hoy se emite es un
retroceso en la protección del derecho del abogado-
querellado a preparar adecuadamente su defensa, disiento.

El Tribunal fundamenta su decisión de desviarse de In
re Pérez Riveiro, *supra*, en lo resuelto por el Tribunal
Supremo federal en Zauderer v. Office of Disciplinary
Counsel, 471 U.S. 626 (1985). En dicho caso, el Tribunal
Supremo federal hizo una excepción a la norma adoptada en
In re Ruffalo, 390 U.S. 544 (1968), al resolver que no se
violó el derecho del abogado-querellado al debido proceso
de ley por el mero hecho de que la teoría utilizada por el
Tribunal Supremo de Ohio para sancionarlo distara de la
teoría utilizada por la Oficina del Consejo Disciplinario
en su recomendación. A esos efectos, el Tribunal Supremo
federal expresó que lo importante era que la recomendación
del Consejo Disciplinario sirviera para notificarle al
abogado de los cargos ("what is important is that the
Board's recommendations put appellant on notice of the
charges he had to answer to the satisfaction of the

Supreme Court of Ohio".).[14] Es decir, según el foro federal, lo que importa no es que el tribunal imponga una sanción por un razonamiento distinto al que se utiliza al imputar el cargo, sino que durante la vista disciplinaria el abogado o la abogada fuese notificado adecuadamente sobre los hechos en los cuales se basan los cargos en su contra.

Conforme a esto, la Opinión mayoritaria razona que **"en las instancias en donde el expediente ante la consideración del Tribunal refleje que en cuanto a la conducta impropia adicional al querellado se le han salvaguardado todas las garantías que emanan del debido proceso de ley**, el Tribunal podrá – si lo estima apropiado – evaluar y atender dicha conducta adicional dentro del mismo procedimiento disciplinario, sin necesidad de referirlo al Procurador General".[15] (Énfasis nuestro). Según la mayoría, dicha excepción se justifica en el presente caso, ya que la Comisionada Especial incluyó en su Informe que la conducta impropia no imputada en la querella fue debidamente identificada y que las garantías constitucionales del licenciado Martínez Almodóvar fueron salvaguardadas en su totalidad durante las vistas.

La realidad es que el caso ante nuestra consideración se distingue claramente de <u>Zauderer</u> y que lo que indica la Comisionada no es correcto. Ambas cosas aconsejan una decisión distinta a la que ha adoptado el Tribunal.

---

[14] <u>Zauderer v. Office of Disciplinary Counsel</u>, 471 U.S. 626, 654 (1985).

[15] <u>In re Martínez Almodóvar</u>, Opinión mayoritaria, res. de 31 de enero de 2011, a la pág. 19-20.

En <u>Zauderer</u>, la querella incluía un cargo por omitir información sobre los honorarios por contingencia en un anuncio publicitario de servicios legales. Según la querella, dicha actuación no constituía un anuncio engañoso, sino que omitía información indebidamente. No obstante, y luego de varias vistas, el Panel Disciplinario determinó que el anuncio era engañoso, conclusión que adoptó el Tribunal Supremo de Ohio. Ahora bien, los hechos en los cuales se basó la querella para imputar un cargo por omisión eran los mismos que dieron lugar a la conclusión de que el anuncio pagado por el abogado-querellado era engañoso. El Tribunal Supremo federal concluyó que, en esas circunstancias, **el cambio de teoría, de un cargo por omisión a uno por anuncio engañoso, no constituía una "trampa" para enmendar la querella sin previo aviso al abogado.** Por eso entendió que el *ratio* del caso <u>In re Ruffalo</u>, *supra*, no era aplicable.

Concluir que se puede aplicar <u>Zauderer</u> al caso de autos es erróneo, pues aquí sucedió algo totalmente diferente. En el caso ante nuestra consideración, la querella le imputó al abogado-querellado tres cargos relacionados a su función como notario. Estos cargos le imputaron el haber autorizado una escritura pública de compraventa cuando una de las partes estaba incapacitada al momento de la otorgación, haber consignado hechos

falsos en la escritura que resultaron en un negocio simulado y no haberse esforzado al máximo en exaltar la dignidad de la profesión y evitar la apariencia de conducta impropia, al consignar hechos falsos en la escritura. Luego de varias vistas, la Comisionada Especial rindió su Informe, el 13 de diciembre de 2009, y determinó que no se presentó prueba clara, robusta y convincente para concluir que el licenciado Martínez Almodóvar había violado los postulados éticos en los cuales se basaban los cargos imputados. Como consecuencia, recomendó que no se sancionara al abogado-querellado en cuanto a los tres cargos de la querella.

Pese a ello, la Comisionada Especial entendió que el licenciado Martínez Almodóvar había violado la Regla 5 del Reglamento Notarial de Puerto Rico,[16] al comparecer como representante legal del comprador contra la persona que tenía la tutela del vendedor incapacitado, en un caso de desahucio posterior basado en la escritura que el abogado-querellado había preparado.[17] El Informe concluyó que aunque "según nuestra opinión no existe prueba suficiente para aseverar otra naturaleza de cooperación entre el notario querellado con [el comprador]; ello crea la fuerte

---

[16] 4 L.P.R.A. Ap. XXIV, R.5.

[17] "Establecido lo anterior, debemos referirnos ahora a lo que opinamos **consiste otra conducta impropia del notario querellado, cuya conducta no está imputada en el escrito de querella**, aunque si [sic] se alega por la OGP violación al canon 38, pero por otros motivos…". (Énfasis nuestro). Informe de la Comisionada Especial, 13 de diciembre de 2009, pág. 34.

apariencia de que el notario en realidad respondía y defendía los intereses de uno de los otorgantes…".[18]  Así las cosas, concluyó que el licenciado Martínez Almodóvar violó el Canon 38 de los Cánones de Ética Profesional,[19] por apariencia de conducta impropia, y recomendó que fuera sancionado.

La Comisionada Especial reconoce que estos hechos no fueron imputados en la querella.  Concluye, sin embargo, que no hubo violación al derecho del abogado al debido proceso de ley.  Sobre este asunto expresó que:

> El hecho de que específicamente no se haya[n] imputado en el escrito de Querella estas alegaciones; y que sea en estos procedimientos y por esta Comisionada que se haya anunciado y establecido por primera vez en este Informe esta naturaleza de violación informada; en nada viola el debido proceso de ley del querellado. **Es un hecho indubitado que durante el curso de los procedimientos las trajimos a colación como hallazgos** al examinar los expedientes una vez elevados; **y ofrecimos la oportunidad al querellado de impugnar el contenido de las minutas mediante la citación de la secretaria que certificaba las Minutas de instancia;** sobre lo cual el Notario querellado no tomó acción alguna, e igual le dimos la oportunidad de expresarse.[20] (Énfasis nuestro).

---

[18] *Íd.*

[19] 4 L.P.R.A. Ap. IX, C. 38.

[20] En cuanto a la oportunidad para expresarse, del Informe se desprende que "[n]uestro mejor recuerdo es que el abogado-notario querellado explicó en sala que él compareció a asistir a don José en dicho caso de desahucio porque como ante él se había otorgado la escritura de compraventa, ante una acción de esa naturaleza, don José le pidió que compareciera para acreditar el otorgamiento… que compareció solamente esas dos veces, más bien para informar al tribunal de San Germán". Informe de la Comisionada Especial, supra, págs. 34 y 35.

Para fundamentar lo antes expuesto, el Informe de la Comisionada nos refiere a las minutas de las vistas celebradas el 14 de abril de 2009 y el 9 de julio de 2009. Sin embargo, al estudiar el expediente no podemos concluir que sea un "hecho indubitado" el que se salvaguardaran los derechos del abogado-querellado al debido proceso de ley, sino todo lo contrario. Más allá de que el *ratio* de Zauderer no aplica en esta instancia, la prueba a la que nos remite el Informe no revela que la Comisionada Especial haya tomado medidas efectivas para proteger el derecho constitucional del licenciado Martínez Almodóvar a ser notificado adecuadamente.

Primero, las dos vistas antes mencionadas no eran vistas en su fondo, sino las conferencias preliminares para pautar los procedimientos, acordar estipulaciones y fijar las teorías de las partes.[21] Además, la primera minuta a la que se refiere el Informe, de 14 de abril de 2009, no se encuentra en el expediente. De la segunda minuta, de 9 de julio de 2009, sólo se desprende que "**[l]a Comisionada Especial indicó que hay un aspecto que surge claro de los autos del caso** y surge en dos minutas de las vistas del 16 de noviembre de 2001 y el 1ro. [sic] de febrero de 2002. En el caso de desahucio IP2002-0038 y que se refiere a una primera comparecencia y en una

---

[21] En efecto, las vistas evidenciarias, donde se debe hacer valer el derecho al debido proceso de ley, fueron celebradas los días 15, 16 y 17 de julio y 19 de agosto de 2009. Informe de la Comisionada Especial, supra, pág. 9.

segunda comparecencia del caso, el querellado en desahucio, José A. Cancel Pagán, aparece representado por el Lcdo. Melvin Martínez Almodóvar".[22]

Ahora bien, cabe preguntarse, ¿es suficiente una escueta minuta para probar que se salvaguardó durante todo el procedimiento el derecho al debido proceso de ley del licenciado Martínez Almodóvar? Por otro lado, ¿es necesario que surjan claramente del expediente, y de forma meridianamente detallada, las medidas tomadas para proteger dichos derechos? Una excepción a la norma adoptada en In re Pérez Riveiro, *supra*, debe contemplar estas interrogantes antes de proponer una solución como la presente. Esto, porque "[t]odo proceso disciplinario se ejecuta en armonía con el debido proceso de ley, con arreglo a un procedimiento formal mediante el cual no sólo se le informa al abogado de los cargos que operan en su contra, sino que más importante aún, se le ofrece amplia oportunidad para contestarlos y defenderse".[23]

Este Tribunal tiene la potestad de designar a un Comisionado Especial para que reciba la prueba y dirima sobre la evidencia conflictiva,[24] y sus determinaciones

---

[22] Énfasis nuestro, Minuta de la Comisión Especial, 9 de julio de 2009, pág. 5.

[23] In re Ríos Ríos, 2008 T.S.P.R. 186, a la pág. 20, 175 D.P.R. ___ (2008), In re Sepúlveda, Casiano, 155 D.P.R. 193, 208 (2001). Véase, además, In re Pagán, 71 D.P.R. 761 (1950).

[24] In re Gordon Menéndez I, 171 D.P.R. 210, 217 (2007), In re Morales Soto, 134 D.P.R. 1012, 1016 (1994).

fácticas merecen nuestra mayor deferencia.[25] Sin embargo, no podemos claudicar nuestra responsabilidad como foro máximo de asegurar que ello se lleve a cabo sin lacerar el derecho al debido proceso de ley de los implicados en los procesos disciplinarios. Además, este Tribunal no está obligado a aceptar el informe del Comisionado Especial, pudiendo adoptar, modificar o rechazar tal informe. En este caso no podemos avalar la recomendación de la Comisionada de sancionar al abogado-querellado cuando del propio expediente no surge claramente que se le haya notificado adecuadamente de la conducta impropia no contenida en la querella que sirve de base para la recomendación.

A todas luces, la Opinión mayoritaria deposita su confianza en las expresiones del Informe. Al hacerlo, trata de forma superficial la necesidad de que el propio expediente revele el fiel cumplimiento del debido proceso de ley durante el procedimiento. La realidad es que lo único que se puede constatar del contenido del expediente en este caso es que durante las vistas preliminares se le hizo una escueta mención al licenciado Martínez Almodóvar de una conducta aparentemente impropia. Más allá de las breves expresiones de la Comisionada Especial, no surge del expediente que se le haya expuesto claramente al licenciado Martínez Almodóvar que dichos actos, no incluidos en la querella, serían añadidos como un cargo

---

[25] In re Soto López, 135 D.P.R. 642, 646 (1994).

nuevo e independiente para ser considerado en las posteriores vistas evidenciarias. Tampoco refleja que se le haya ofrecido la oportunidad de presentar prueba a su favor respecto a esos nuevos actos durante las vistas evidenciarias posteriores. Ciertamente, la liviandad con la que se atiende este asunto me resulta, como mínimo, alarmante.

El avalar las expresiones de la Comisionada Especial en este caso puede abrir la puerta a que cualquier conducta que tenga un ápice de apariencia de conducta impropia pueda ser incluida *sub silentio*, o con una mera mención, como un cargo durante un procedimiento ya iniciado. Debido a la fácil dilución de un término tan amplio e impreciso como apariencia de conducta impropia, esta decisión puede poner en jaque la protección del derecho al debido proceso de ley de los abogados y abogadas que sean sometidos al proceso disciplinario.

En efecto, nuestro dictamen en <u>In re Pérez Riveiro</u>, *supra*, pretende evitar circunstancias como la presente. En el caso ante nuestra consideración hay muy poco en el expediente que se refiera siquiera al nuevo cargo. Más bien, el expediente se refiere, casi en su totalidad, a los cargos imputados originalmente en la querella. Por su parte, el Informe de la Comisionada Especial le dedica a ese asunto tan sólo tres de un total de 36 páginas. Resolver que una simple indicación de que una conducta podría ser sancionable constituye prueba suficiente de una

notificación adecuada del nuevo cargo añadido socava nuestro precedente más reciente. Máxime cuando este Tribunal, ante la falta de prueba clara que apoye lo expresado en el Informe, tampoco le proveyó al abogado-querellado la oportunidad de expresarse sobre este particular.

En conclusión, debido a la incongruencia de los hechos y a la ausencia de prueba en el expediente que sustente de forma adecuada que al licenciado Martínez Almodóvar se le protegió su derecho al debido proceso de ley, no podemos aplicar la norma de Zauderer. Lo que sucedió aquí no fue un cambio en la teoría del Procurador. No surge que el abogado-querellado esté avisado aquí, como lo estuvo en Zauderer, de los hechos que dan lugar al cargo imputado. Por tanto, la vía más sensata a seguir es la norma tal y como fue adoptada en In re Pérez Riveiro, *supra*, en el cual se le ordenó al Procurador General investigar la nueva información recibida por la Comisionada Especial para determinar si debía presentarse una nueva querella e iniciar un proceso disciplinario separado. Sólo de esta forma se podrá mantener un balance armonioso entre los intereses del querellado y los de nuestra sociedad.[26]

---

[26] No podemos olvidar que para "un abogado sometido a una querella disciplinaria, su caso es único, personal e insustituible. Representa la esperanza o fracaso profesional inmediato de un ser humano, lo que de por sí exige una profunda reflexión por el juzgador de todos los elementos presentes". In re Lavastida, 109 D.P.R. 45, 87 (1979), opinión concurrente y disidente del Juez Asociado, Señor Negrón García.

Por tanto, en fiel observancia de nuestro deber de regular la profesión jurídica, referiría el asunto concerniente a la violación de la Regla 5 del Reglamento Notarial y el Canon 38 al Procurador General para que estudie los hechos y nos informe si se debe someter una querella para dilucidar la violación ética en su correspondiente vista, cumpliendo así las exigencias del debido proceso de ley.

Liana Fiol Matta
Jueza Asociada